LAURA HILLS, Admx., Appellant, *vs.* S. W. McMUNN *et al.* Appellees.

*Opinion filed February 20, 1908.*

1. SPECIFIC PERFORMANCE—*party cannot take advantage of departures he has acquiesced in.* A defendant to a bill for specific performance cannot escape liability by reason of departures from the terms of the contract which were made at his own suggestion or in which he has acquiesced with full knowledge of the facts.

2. SAME—*when party is entitled to maintain a bill for specific performance.* One who has a beneficial interest in the subject matter of a contract involving the sale of stock in a corporation and the transfer to the corporation of a certain patent and whose name is signed to the contract with that of the vendor and his interest known to the vendee, may maintain a bill against the vendee to compel specific performance of the contract.

3. SAME—*when party is not required to seek a remedy at law.* Where stock in a corporation has no market value and is not on the market for sale, its value being dependent upon the value of a certain patent owned by the corporation, one who is entitled, by contract, to a certain number of shares of stock is not obliged to seek a remedy at law for damages in case the contract is not performed but may maintain à bill in equity for specific performance.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding.

This suit was begun by Fred Hills in the circuit court of Cook county by a bill in chancery to enforce the specific performance of a contract. The bill was answered by the defendants, and one of them, Albert H. Weber, filed a cross-bill. After issue joined, the cause was heard in open court. At the conclusion of the evidence for complainants in the original and cross-bills the court entered a decree dismissing the bill and cross-bill for want of equity. Complainant in the original bill appealed to the Appellate Court, and while the case was pending there he died. His wife, Laura Hills, was appointed administratrix of her husband's estate, and as such was substituted as party complainant in the suit. The decree of the circuit court was affirmed by the Appellate Court, and the administratrix has brought the case by appeal to this court.

A statement of some of the facts before taking up the allegations of the bill will obviate the necessity of setting out the substance of the bill in full and will aid in giving a clearer understanding of the nature of the controversy.

In April, 1904, the Slick Steel Piling Company was organized as a corporation under the laws of Arizona by Albert H. Weber, one of the defendants to the original bill and complainant in the cross-bill. This corporation was organized for the purpose of taking over a patent for which letters patent had been issued to Samuel K. Behrend and which was supposed to be a valuable invention in the use of steel in manufacturing piling. The capital stock of the Slick Steel Piling Company was $500,000, divided into shares of $100 each, and was substantially all owned originally by Weber. Weber appears to have been without any substantial means, and in May, 1904, employed Hills, who was a civil engineer, to make an effort to dispose of a portion of the stock. Weber agreed with Hills that if he would sell three thousand shares of the stock they would divide the net proceeds equally between them, and would also divide equally between them the remaining two thousand shares of the

Slick Steel Piling Company stock. Weber executed a power of attorney to Hills, giving him full authority to act in his behalf.

The bill alleges that in August, 1904, Hills made a contract with the appellee S. W. McMunn to sell to him three thousand shares of the stock of the Slick Steel Piling Company for $25,000, $15,000 of which was to be paid in cash upon it being made satisfactorily to appear to McMunn that the Slick Steel Piling Company was a lawful corporation and when a good title to the letters patent to the Behrend invention should be conveyed free of all liens and encumbrances, and the remaining $10,000 was to be placed in the treasury of the company. The contract was dated August 18, 1904, and provided that the evidence that the company was a lawful corporation should be presented and the conveyance of the letters patent be made within thirty days. The bill alleges that upon the making of the contract McMunn advanced to Weber $300 and to Hills $200 as a part of the $15,000; that Weber then went to California and has remained there ever since. The bill further alleges that the Slick Steel Piling Company was, in fact, a lawful corporation, and that prior to August 31, 1904, Hills caused satisfactory evidences of that fact to be presented to McMunn; that the title to the patent was not in the corporation, but three-fourths of it was owned by Behrend and one-fourth of it by two other parties; that Hills, immediately after making the contract with McMunn, procured an agreement from Behrend to convey his interest to Weber or the corporation for $6000; that he also entered into negotiations with the parties who owned the other one-fourth interest in the patent; that he kept McMunn informed of all he was doing in that regard, and before he had procured the assignments of the patent McMunn told Hills the name of the corporation was objectionable to him on account of the word "Slick;" also that he was unfamiliar with the laws of Arizona, and thought he might prefer to

substitute a new corporation organized under the laws of Illinois, and suggested to Hills that he procure the assignment of all interests in the patent to himself, in order that it might thereafter be assigned to the Slick company or to a new corporation; that Hills agreed to this, and it was thereupon agreed between himself and McMunn that if the contract was carried out between them by substituting a new corporation for the Slick Steel Piling Company, the new corporation should have a capital stock of $500,000, divided into shares of the par value of $100, and that upon the title to the patent being placed in the new corporation, McMunn should, upon the payment of $25,000, receive three thousand shares of the stock and that $10,000 of the sum paid by him should go into the treasury of the corporation; that Hills and Weber should receive the remaining $15,000 and the remaining two thousand shares of the stock of the new corporation. The bill alleges that Hills procured assignments from all owners of said patent to be made and delivered to him for the sum of $8500; that these assignments were made with the knowledge of McMunn and were passed upon by his counsel; that McMunn advanced him $8500 to apply on account of the $15,000, and that he (Hills) paid it over to the persons from whom he had procured assignments of the patent; that at McMunn's request Hills conveyed his title to the patent to James M. McConahey, to be held in trust by him for the purpose of consummating the agreement between McMunn and Hills; that it was expressly agreed that McConahey was to act as trustee, and convey the title to the patent either to the Slick Steel Piling Company or to a new corporation, if organized, upon a division of the capital stock of the transferee corporation and the payment of the money as required by the contract and arrangements between McMunn on the one hand and Hills and Weber on the other. The bill further alleges that on the 10th of September, 1904, Hills became ill and was in a hospital in Chicago two weeks, and that while

he was so in the hospital McMunn organized a corporation called "United States Steel Piling Company," with a capital stock of $500,000, divided into shares of the par value of $100 each; that the incorporators of said company were persons in McMunn's employ, and immediately upon its organization McConahey, without the knowledge or consent of Hills, transferred to it title to said patent which he held in trust, and that practically all of the stock of the corporation was issued as a consideration for such transfer and is now held or controlled by McMunn. The bill charges that it is the belief of the complainant that he was induced to convey the patent to McConahey by McMunn and that the new company was organized as part of a deliberate scheme and purpose on the part of McMunn to defraud Hills and Weber; that McMunn now refuses to give complainant any information concerning the new company and refuses to carry out and perform his contract and obligations as set forth in the bill. McMunn, McConahey and United States Steel Piling Company are made defendants, and the bill prays that McMunn be required to pay to the complainant one-half of $15,000, less one-half the advances heretofore made by McMunn; that McMunn be required to pay into the treasury of the corporation $10,000 and cause to be transferred to the complainant one thousand shares of the capital stock of said corporation.

Weber answered the bill admitting its allegations, and filed a cross-bill setting up substantially the same facts as the original bill and praying the same relief.

McMunn answered admitting the making of the contract under date of August 18, 1904, and the organization of the Slick Steel Piling Company and United States Steel Piling Company, but averred that he learned the title to the Behrend patent was outstanding and unpaid for and that Weber and Hills had no money to buy it; that the contract between himself and Weber was not performed by Weber; that said contract was wholly abandoned, and respondent bought the

patent on his own account and had it assigned to Hills and from Hills to McConahey, but not upon any trust agreement; that the organization of the United States Steel Piling Company was not done in carrying out the contract between himself and Weber; that said contract terminated and expired thirty days after August 18, 1904, on account of the failure of Weber to carry out his part of the contract. The answer admits the United States Steel Piling Company was the owner of the patent; that the five thousand shares of capital stock were issued to McConahey upon his making the assignment of the patent, and that McConahey held the stock for McMunn's benefit.

ISHAM, LINCOLN & BEALE, for appellant.

M. J. SCRAFFORD, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

The real issue of fact made by the pleadings is whether the written agreement dated August 18, 1904, was afterwards modified by a parol agreement between McMunn and Hills, acting for himself and Weber. Appellant's contention is, that on account of the objections of McMunn, and others associated with him in business, to the name of the Arizona corporation, and also on account of their objections to operating under a corporation organized under the laws of that territory, it was agreed to substitute a new corporation organized under the laws of Illinois, and that otherwise the contract should remain as written. This is squarely denied by the answer of McMunn. On the trial no testimony was offered on the part of appellees except that of McConahey. He was about to leave the city and was permitted on that account to testify before appellant's case had been concluded. At the conclusion of the testimony for the complainant and cross-complainant appellees moved to dismiss the bill for want of equity. The motion was allowed and the bill dismissed.

While some questions of law are raised and discussed in the brief and argument, the principal question discussed by counsel for both sides is as to the sufficiency of the evidence to entitle appellant to the relief prayed.

What is referred to in the record as the contract between the parties consists of a proposition submitted by Weber to McMunn under date of August 9, 1904, and an acceptance thereof by McMunn under date of August 18, 1904. Said proposition and acceptance are as follows:

"AUDITORIUM HOTEL, CHICAGO, ILLINOIS, *August 9, 1904.*
"*S. W. McMunn, Esq., Chicago, Ill.*

"DEAR SIR—The Slick Steel Piling Company is a corporation organized under the laws of Arizona, with five thousand shares of $100 each, par value, and is the owner of U. S. patent No. 639,884, under date of December 26, 1899, for steel piling, being the prior patent for this kind of product. I will deliver you three thousand shares of this stock for $25,000, of which amount $15,000 is to be cash paid to me, the remaining $10,000 is to be placed in the treasury of the Slick Steel Piling Company for operating expenses.

"I make you this offer and will hold same open for ten days, when you will please report to me the progress you have made in Pittsburg, Pa.
                                    Faithfully yours,
                                              A. H. WEBER."

                                    "CHICAGO, *August 18, 1904.*
"The above proposition is accepted by me. The payment of the sums above mentioned are to be made by me only when satisfactory evidence is presented to me that the Slick Steel Piling Company is a lawful corporation of the Territory of Arizona and duly and legally organized, and when a good title to letters patent No. 639,-884, free and clear of all liens and encumbrances, is conveyed to said Slick Steel Piling Company, all of which must be done within thirty days from August 18, 1904, or this agreement shall be at an end and void. All of which is agreed to by A. H. Weber.
                                              S. W. McMUNN.
404 Lakeside
Harrison 4348. Fred Hills.
A. H. Weber."

Hills testified to having two conversations with Mc-Munn prior to the execution of the contract. In each of them McMunn made some objection to the word "Slick" in the name of the Arizona company and also to an Arizona

corporation. The second conversation was shortly before the contract was signed, and he testified McMunn told him that these were objectionable features to Pittsburg people with whom he was connected and that he would prefer an Illinois corporation; that he (Hills) thereupon stated he was willing to substitute an Illinois corporation and that he and Weber would pay their share of the expense of organizing it. After this conversation McMunn signed the acceptance of the proposition of August 9. The acceptance was also signed by Hills and Weber. Said acceptance was in fact signed August 19 or 20 but was dated August 18. Hills testified that in the afternoon of August 20 he first learned from Weber the exact ownership of the patent; that he then learned Behrend owned three-fourths, which could be obtained for $6000; that a man named Cochran owned one-eighth, which could be bought for $1500, and that a man named Campbell, living either in Pittsburg or Cincinnati, owned one-eighth, which could be bought for $1000, and that he at once began negotiations with them for the purchase of their respective interests. Copies of letters and telegrams were offered in evidence which corroborated him. The third conversation between Hills and McMunn occurred after the signing of the contract and during the same week. At this time, according to Hills' testimony, they talked over the organization of the new corporation and McMunn suggested the name "United States Steel Piling Company." After learning of the ownership of the patent and the money that would be required to procure it, Hills testified he told McMunn about it, and told him that neither he nor Weber had the money to pay for it, and that McMunn told him to go ahead and procure the patent and "we will take care of the thing as soon as ever we get meetings and get a settlement and get a new corporation, or whatever is done they will be taken care of just the same." Hills finally procured assignments from all the owners of the patent for $8500. This money was paid by

McMunn to the parties making the assignments and said assignments were made to Hills. After this was done, Hills testified McMunn requested him to assign the patent to Mc-Conahey, a lawyer officing in McMunn's suite but not employed by him, and he consented to it on condition that the patent should be turned over to the Slick Steel Piling Company or the new corporation if organized, and that McMunn said, "Well, I will fix that." At this time, which was about September 1, Hills was in the employ of McMunn and had been for a short time previous. He was afterwards taken ill and removed to a hospital, where he remained ten days or two weeks. During Hills' stay in the hospital McMunn organized the United States Steel Piling Company and caused the patent to be conveyed to it by McConahey. Hills testified that after returning to McMunn's office from the hospital he spoke to McMunn about having learned from a newspaper of the incorporation of the United States Steel Piling Company, and that McMunn said they would soon get things fixed to hold the first meeting, and that it was all right. Hills continued to work for McMunn and said he occasionally spoke to McMunn about the matter, and McMunn would tell him to go on and keep at work and not bother, as everything would come out all right; that he did continue to work until October 25, when he made a written demand on McMunn for the money and stock he claimed due him on the contract, which demand was replied to the next day by a denial by McMunn of any liability. The proof tends to show that the services of Weber and Hills were valuable, if not necessary, in procuring the assignments of the patent. Weber had procured from Behrend an assignment of his three-fourths interest to the Slick Steel Piling Company, which was held in escrow by George M. Eckels, an attorney of Chicago, until payment was made; also, Weber had an option on Cochran's interest, and it appears that he had some interest in or claim upon Campbell's interest. Copies of several letters written by Hills to Weber

between August 23 and September 28 were introduced in evidence. Hills testified that these letters were all written by McMunn's stenographer in his office and were shown to McMunn and corrected by him before mailed. These letters all tend strongly to show that Hills understood the contract to be in force, with the modification that an Illinois corporation was to be substituted for the Arizona corporation. In a letter dated September 28 Hills wrote Weber that McMunn advanced the money to pay for the patent; that the assignments had been made to him and he had transferred the patent to a trustee, who was to turn it over to the Slick Steel Piling Company, or to another company if that was not legal. He further wrote that McMunn had decided to abandon the Arizona company and had incorporated the United States Steel Piling Company with the same capital stock as the Arizona company, and that he expected a meeting of the new company within a few days. He also stated in the letter that he had heard of no intention of McMunn to make any change in their original offer, except that they would have to pay the cost of incorporating the new company, and that he thought the stock they secured in a new company would be valuable because it would be a live and pushing company. Other letters informed Weber of what Hills was doing to procure the patent; that McMunn would furnish the money, and referred to their (Hills' and Weber's) interest in the transaction.

We shall not take time to further quote from the evidence. We have read it, and also the analysis made of it by counsel for the respective parties. The proof shows McMunn knew of the relations of Hills and Weber to each other and their interest in the subject matter of the contract. According to Hills' testimony McMunn was kept informed, at all times, of the negotiations for the patent and of the progress made, and of the correspondence of Hills with Weber and their relations thereto. There is no evidence of any intimation from McMunn to Hills, at any time, that

he regarded the contract as terminated and was seeking to purchase the patent on his own account. It is true that when the contract was made McMunn did not contemplate advancing money for the purchase of the patent. At that time he understood the patent was owned by the Slick company, as stated in the proposition of Weber of August 9, which became part of the contract. When he learned that company did not own the patent and that Hills and Weber had not the money to procure it he would have been authorized to refuse to advance the money and thereby terminate the contract. He appears, however, to have been desirous of owning the patent, and according to the testimony told Hills to go ahead and secure the assignments and he would furnish the money, and but for his objections to the Arizona company the patent might have been transferred to it. If, as testified to by Hills, it was at the instance of McMunn a new corporation was substituted for the Arizona company as transferee of the patent, he cannot now claim this was an abandonment of the contract. Nor can he be heard to say that because the transaction was not consummated within the time named in the written contract said contract is not binding, for the reason that, according to the evidence, if not partly responsible for the delay he at least acquiesced in and consented to it.

We have only undertaken to give the substance of what appears to us some of the most important parts of the testimony of Hills and the documentary evidence offered. We have read and considered it all, and are of opinion there are no such contradictions or inconsistencies in it as to materially weaken its force. The testimony of other witnesses to which we have not referred had not a direct bearing upon the real controversy. Our conclusion is that the evidence, uncontradicted, established the modification of the written contract.

The appellees contend that the power of attorney from Weber to Hills gave the latter no power to modify a con-

tract. It is true, a modification of the contract is not mentioned in the power, but it was very broad in its terms and gave Hills full power to represent Weber in all business in connection with the Slick Steel Piling Company and procuring control of the Behrend patent. But we do not see how McMunn is in a position to raise this question. According to the testimony of Hills, Weber was informed of the modification, and he not only did not question Hills' authority to make it, but has by his answer and cross-bill ratified and confirmed it.

It is also claimed there is a fatal variance between the allegations of the bill and the proofs. While some of the allegations are not proved in the words alleged, they are substantially so, and there is no material variance.

It is further urged that Hills had no such interest in the subject matter of the litigation as to authorize him to maintain the suit. The evidence shows he notified McMunn of his agreement with Weber, and the contract of August 18 is signed by Hills, Weber and McMunn. There appears to have been a slight modification of the original agreement between Weber and Hills with reference to a commission of $500 to be paid Hills for a sale of the stock of the Slick company, but otherwise their interest in the stock and the proceeds of the sale remained as we have before mentioned. The proof shows Hills had the beneficial interest in one-half of the subject matter of the litigation, and this is admitted by the answer and cross-bill of Weber. We think he was entitled to maintain the suit. *Winkelman* v. *Kiser,* 27 Ill. 21; *Smith* v. *Bates Machine Co.* 182 id. 166.

It is also contended that the case made by the bill and proofs shows no grounds for the interposition of a court of equity, and that if appellant has any remedy the law will afford adequate relief. The stock of the United States Steel Piling Company is not shown to have had any market value or to have ever been on the market for sale. Whatever value it has is dependent upon the value of the patent

owned by the corporation. It is said in Cook on Corporations (sec. 338) : "If the stock contracted to be sold is easily obtained in the market and there are no particular reasons why the vendee should have the particular stock contracted for, he is left to his action for damages. But where the value of the stock is not easily ascertainable or the stock is not to be obtained readily elsewhere, or there is some particular and reasonable cause for the vendee's requiring the stock contracted to be delivered, a court of equity will decree a specific performance and compel the vendor to deliver the stock." We think the case one for the exercise of equitable jurisdiction and that the court erred in dismissing the bill.

The judgment of the Appellate Court and the decree of the circuit court are reversed and the cause remanded.

*Reversed and remanded.*