Ferdinand W. Peck, Jr., Appellant, v. Harold Beacom, Appellee.

Gen. No. 36,566.

Opinion filed November 21, 1933.   Rehearing denied December 4, 1933.

SCHEIN & BECKWITH, for appellant; JOSEPH M. COHEN, of counsel.

HAROLD A. SMITH and DOUGLAS C. MOIR, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

By this appeal complainant seeks to reverse a decree of the circuit court, entered November 18, 1932, wherein the court sustained defendant's demurrer to complainant's amended bill for specific performance of defendant's contract or agreement, on the ground that complainant had an adequate remedy at law, and, complainant electing to stand by the bill, dismissed the same for want of equity, but "without prejudice to complainant's right to proceed at law upon the facts charged in said bill." The salient facts, as alleged in the bill and admitted on the hearing of the demurrer to be true, are in substance as follows:

That the parties are both residents of Chicago, Illinois; that on February 20, 1931, defendant, by his written agreement of that date (copy attached and made a part of the bill) "agreed to purchase from complainant forty (40) stock units, each unit comprising one (1) share of the preferred stock and one-half (½) share of the common stock of the Lake Gas Company, an Ohio corporation, and to pay for the same at the rate of $125 per unit upon his demand, said stock units to be delivered to defendant as soon thereafter as certificates may be issued in his name by said Lake Gas Company"; that complainant has often demanded and now demands of defendant the sum of $5,000, repre-

senting the purchase price of said forty stock units, and has often tendered and now tenders to defendant certificates of stock of said Company equal to said forty stock units, but that defendant has refused and still refuses to pay said sum or to accept said forty stock units in disregard of his said agreement; that the Lake Gas Company is an Ohio corporation and "engaged in the business of distributing gas for lighting and heating purposes to various consumers in certain communities in the State of Ohio;" that it commenced business operations in December, 1930; that "its tangible assets" consist of a system of gas mains, pipe lines, buildings, meters and other operating equipment; that "its chief assets," and those which primarily impart value to its stock, "are wholly intangible and uncertain, consisting of valuable but determinate franchises for the distribution of gas granted to it by the State of Ohio," and similar franchises by various communities in that State, and also "rights of way" granted to it by said State and various counties and communities therein, which said rights of way exist at the will of the grantors, and also "the privilege of selling and distributing gas at rates fixed by the Public Utilities Commission of Ohio, but subject to be changed at the will of said Commission"; that various other factors "contributing to make said stock highly uncertain and speculative in value," are "that the company has no exclusive franchises, but it is at present operating in certain communities without franchises and subject in such operations to the will of such communities, and that all of its franchises are of short duration and uncertain as to renewal"; that no dividends have ever been paid on either its preferred or common stock; that said stock "is not and never has been listed on any stock exchange"; that none of the company's shares "has ever been sold upon the open market or offered for sale to the public generally"; that said stock "has never had and does not now

have any market value"; that both the common and preferred stock "is closely held and is not obtainable in the open market"; that all of the common and preferred stock, except that which is owned by complainant, "is owned exclusively by the Lake Gas Corporation, an Indiana corporation"; that complainant "has made frequent efforts to sell certain of said preferred and common stock (which he owns in addition to that sold to defendant), but has been utterly unable to do so at any price or in any amount"; that there have been no recent transfers of either the preferred or common stock; that by virtue of the foregoing the stock "has no fixed or ascertainable market value"; and that complainant has often demanded of defendant that he specifically perform said agreement, but defendant has failed and refused, and still refuses, so to do, etc.

The prayer is that defendant answer the bill, but not under oath, and that defendant may be compelled by a decree specifically to perform his agreement with complainant, and to pay to complainant "the purchase price for said stock of $5,000, with interest,—complainant being willing and hereby offering to perform the said agreement on his part, and, on being paid said purchase price and interest, to transfer and deliver the proper certificates to defendant," etc.

Two contentions are made by complainant's counsel as ground for a reversal of the decree, in substance (1) that the amended bill on its face shows that complainant has not an adequate remedy at law, in that the stock in question has no market value and its actual value is difficult of ascertainment, and, hence, in an action at law complainant's damages, on account of defendant's refusal to accept and pay for the stock, cannot be measured; and (2) that the remedy in cases of specific performance is mutual, so that either a vendor or a vendee may avail himself of it.

After reviewing the allegations of the amended bill and numerous authorities, we are of the opinion that there is substantial merit in both of counsels' contentions, and that the court should have overruled defendant's demurrer to the bill. In Pomeroy's Specific Performance of Contracts, 3rd Ed., 1926, page 53, sec. 19, it is said in a note: "The prevailing American rule now is that contracts for the sale of stock that has no recognized market value, or which is not readily procurable except from the defendant, will be specifically enforced." Among the cases cited by the writer, as sustaining the statement, are the Illinois cases of *Hills v. McMunn*, 232 Ill. 488, 499; *Smurr v. Kamen*, 301 Ill. 179, 188; and *Cazier v. Mohr*, 197 Ill. App. 550, 555. In the *Hills* case it is said: "It is also contended that the case made by the bill and proofs shows no grounds for the interposition of a court of equity, and that if appellant has any remedy the law will afford adequate relief. The stock of the United States Steel Piling Company is not shown to have had any market value or to have ever been on the market for sale. Whatever value it has is dependent upon the value of the patent owned by the corporation." And after quoting certain statements made in 1 Cook on Corporations, 6th Ed., page 961, sec. 338, the court concludes: "We think the case one for the exercise of equitable jurisdiction and that the court erred in dismissing the bill." In the *Smurr* case (301 Ill. 179, 188) it is said: "The right to specific performance of a contract for the sale of corporate stock depends upon the character of the stock. If the shares are readily obtainable in the open market specific performance will not be decreed, but if the shares have no market rating and cannot easily be obtained elsewhere specific performance will be granted." In an exhaustive note in 50 Lawyers' Rep. Ann., p. 501 (published in 1901), the writer says: "But where the shares (of stock) are limited and not easily obtainable, or where their value

cannot be readily ascertained, the contract will be enforced. The *tendency seems to be towards a more liberal allowance of the remedy.*" (See, also, note in 22 A. L. R., p. 1038, published in 1923.) While the two Illinois cases, above referred to, are cases where the relief granted was in favor of the vendee of stock, the weight of authority in this country seems to be that relief by directing specific performance of the contract will also be granted in a proper case to the vendor of stock. A well reasoned case on the proposition is *Cole v. Cole Realty Co.*, 169 Mich. 347, where it appears that Cole filed a bill against the company for the specific performance of a contract for the sale of corporate stock; that defendant's demurrer to the bill was overruled; and that on appeal from the order the Supreme Court affirmed it and directed that defendant answer the bill. The court said (pp. 351, 352, italics ours):

"Counsel for defendant correctly state that the main question in the case is whether the complainant has an adequate remedy at law, and urge that he has, for the reason that he only seeks to recover a money judgment for a liquidated sum, being the price defendant agreed to pay him for his stock. *If the stipulated price* for the article bought *was the measure of damages* in a suit at law for breach of contract, the question would be readily solved as defendant contends. But, according to the allegations in complainant's bill, the defendant has not performed the contract, *has not accepted the stock,* and refuses to do so. The stock is, and will remain, complainant's, unless specific performance is decreed. In a suit at law, his damages would be the difference, at the time of the breach, between the *market value of the stock,* if it had a market value, or otherwise the actual value, and *the price* it was contracted he should be paid for it. If it had a market value and could be readily bought and sold, he has an adequate remedy at law. (Citing cases.)

"Though the law of specific performance primarily relates to realty contracts, and, as a general rule, is not applicable where the subject matter is personal property, yet specific performance will be decreed and a contract enforced where the thing, in the nature of personal property, has a sentimental value, is rare, and cannot be obtained elsewhere, or has no market value, or the true value is difficult of ascertainment, or requires an accounting, or other peculiar circumstances of the contract involve conditions where the measure of damage in a court of law will not give full and adequate compensation. This doctrine has been held, by abundant authority, to apply in favor of a *vendee* of stocks not easily procurable and having no market value. (Citing numerous authorities.)

"Equity less readily entertains the cause of a *vendor* seeking specific performance than that of a vendee, on the ground that, in many instances, the vendor can more easily compel adequate relief in a court of law; but in cases where the contract is mutually binding it is an accepted rule that if the vendee is entitled to specific performance the vendor should be granted the same relief, for the reason that *mutual obligations should give mutual remedies*. (Citing authorities.)" See, also, in this connection the cases of *Morgan v. Bartlett,* 75 W. Va. 293, 296; *Kennerly v. Columbia Chemical Corp.,* 137 Va. 240, 119 S. E. 265, 267; *First Nat. Bank of Hastings v. Corporation Securities Co.,* 128 Minn. 341, 347, 348.

This principle in specific performance cases, that "mutual obligations should give mutual remedies," is thus stated in 2 Story's Eq. Juris., 14th Ed., sec. 1004, p. 385: "Where the specific performance of a contract respecting chattels will be decreed upon the application of one party, Courts of Equity will maintain the like suit at the instance of the other party, although the relief sought by him is merely in the nature of a com-

pensation in damages or value; for in all such cases the court acts upon the ground that the remedy, if it exists at all, ought to be mutual and reciprocal, as well for the vendor as for the purchaser.'' And in Pomeroy's Spec. Perf. of Contracts, 3rd Ed., 1926, sec. 165, p. 423 *et seq.*, it is said: ''And it is a familiar doctrine that if the right to the specific performance of a contract exists at all, it must be mutual; the remedy must be alike attainable by both parties to the agreement. For this reason the purchaser's obligation in a contract for the sale of land, although nothing more, perhaps, than a liability to pay a certain sum of money, may always be enforced by a suit in equity on behalf of the vendor, since the purchaser may, in the same manner, obtain the performance of the vendor's duty to convey. On the same principle a person who has agreed to sell things in action—such as certain claims against a bankrupt debtor, or an annuity, or a patent right—may enforce the purchaser's promise to pay the price by a suit in equity, because the purchaser, on his part, can compel an assignment of the things in action agreed to be sold.''

Counsel for defendant, in their brief and argument here filed, contend that ''The 'mutuality of remedy' theory does not obtain in Illinois in a case of this character.'' We cannot agree with the contention. Under a contract for the sale of land it is well settled by decisions of our Supreme Court that the *vendor* may have a specific performance of the contract. (*Robinson v. Appleton,* 124 Ill. 276, 281; *Burger v. Potter,* 32 Ill. 66, 73; *Wright v. Buchanan,* 287 Ill. 468, 479.) And in the case of *Anderson v. Olsen,* 188 Ill. 502, 506 (not involving a contract for the sale of land), it is said: ''The doctrine of mutuality in cases of specific performance has been recognized by this court in *Lancaster v. Roberts,* 144 Ill. 213, and *Welty v. Jacobs,* 171 id. 624.'' This *Anderson* case, which was decided in 1900,

and is one where a *vendor* of a *patent* sought by bill to have the vendees required to specifically perform their contract to purchase the patent and pay the contract price, is much relied upon by defendant's counsel as sustaining the action of the trial court in the present suit. It appears that the superior court overruled the defendant's demurrer to the bill, that after answer and a hearing the court entered a decree granting the relief prayed for, that on appeal the Appellate Court reversed the decree and directed the dismissal of the bill on the ground that there was a full and adequate remedy at law (90. Ill. App. 189), and that on further appeal the Supreme Court affirmed the judgment of the Appellate Court. In the Supreme Court opinion (p. 506) it is further said: ''In the case of a sale of a patent the *vendee* is not in all cases entitled to specific performance. A court of equity will not decree the specific performance of a contract relating to the sale of personal property at the suit of the vendee, *unless* there is some element or feature in it to show that the relief at law might not be adequate.'' We do not think that the final decision in the *Anderson* case is decisive of the present controversy in favor of defendant, especially in view of the later decisions and holdings in *Hills v. McMunn, supra,* and *Smurr v. Kamen, supra.* It appears prima facie from the allegations of the bill in the present case, admitted on the hearing of the demurrer to be true, that there are numerous ''elements or features'' showing the inadequacy of relief in a suit at law. And in the recent case of *Knass v. Madison & Kedzie State Bank,* 269 Ill. App. 588, 602, it is said: ''It is urged that the remedy at law was complete, but that clearly was not the case. Moreover, the rule that equity will not take jurisdiction where there is a remedy at law is a qualified one. It is so held in *Barton v. DeWolf,* 108 Ill. 195, on which defendants rely. That rule is intended for the protection of the courts and is not to be used as a shield by litigants.''

Counsel for defendant further contend in substance that because of the provisions of subsection 3 of section 63 of the Uniform Sales Act (Cahill's St. 1931, ch. 121a, ¶ 66, p. 2477) a court of equity, notwithstanding the doctrine of mutuality of remedies, cannot take jurisdiction of such a case as is stated in the present bill. In said subsection it is provided as follows: "(3) Although the property in the goods has not passed, if they cannot readily be resold for a reasonable price, . . . the seller may offer to deliver the goods to the buyer, and, if the buyer refuses to receive them, may notify the buyer that the goods are thereafter held by the seller as bailee for the buyer. Thereafter the seller may treat the goods as the buyer's and may maintain an action for the price." But we do not find anything in the statute that abridges or limits the jurisdiction of a court of equity to grant specific performance of the contract in a proper case. And in *Brandenburg v. Buda Co.,* 299 Ill. 133, 139, it is said: "In *McNab v. Heald,* 41 Ill. 326, we distinctly held that where jurisdiction is vested in a court of equity and a like jurisdiction is conferred by statute on a court of law, the presumption is that it was designed to be concurrent and not exclusive unless the court of equity is prohibited or limited in its exercise by the language of the act, and that such a legal remedy does not preclude a court of equity from assuming jurisdiction and affording relief."

For the reasons indicated the decree of the circuit court of November 18, 1932, is reversed, and the cause is remanded with directions to overrule defendant's demurrer to complainant's bill and to allow defendant to answer said bill, if he so desires, and for further proceedings in accordance with equity.

*Reversed and remanded with directions.*
SULLIVAN, P. J., and SCANLAN, J., concur.