TABER D. BAILEY, Admr.,

*vs.*

MERCHANTS' INSURANCE COMPANY, METROPOLITAN NATIONAL
BANK, AND CHARLES SARGENT.

Penobscot.   Opinion April 5, 1913.

*Administrator de bonis non. Administrator. Assignment. Bill in Equity.*
*Certificate of Stock. Collateral Security. Cancellation. Equitable*
*Relief. Executor. Fraud. Good Faith. Interpleader.*
*Jurisdiction. Knowledge. Loan. New Certificate.*
*Pledge. Party. Pro Confesso. Representative*
*of Estate. Redeem. Review. Trustee.*

1. When one purchases of an executor stocks or other securities bearing on their face the revelation of a trust, he may safely do so in the absence of notice or knowledge of any intended breach of trust on the part of the executor.
2. If he purchases like property of an ordinary trustee, the law imposes upon him the duty of inquiring into the right of the trustee to change the securities.
3. An executor has an absolute control over all the personal effects of his testator, but he has no power of charging the effects in his hands to be administered by any contract originating with himself.
4. It is a general rule in chancery practice that a decree signed and entered cannot be impeached or vacated, except by a bill of review or by an original bill for fraud.
5. There are exceptions to this general rule in general chancery practice as well as under our statutes.
6. In cases not heard on the merits, a decree obtained through surprise, accident or mistake may be impeached by an original bill for that purpose in general chancery practice.

On report. Bill sustained. Decree in accordance with opinion.
This is a bill in equity by the plaintiff as administrator de bonis non of the estate of Ignatius Sargent against the Merchants' Insurance Company of Bangor, the Metropolitan National Bank of Boston and Charles Sargent of Boston, in which he prays that the

Insurance Company may be ordered to cancel the certificate of stock issued to the Metropolitan Bank and issue a new one to the estate of Ignatius Sargent, and to pay the plaintiff the dividends accrued thereon. This stock, it is claimed, belonged to the estate of Ignatius Sargent and was transferred by Charles Sargent to himself, without legal authority. To this bill, the Metropolitan National Bank filed a demurrer and answer and the Merchants' Insurance Company filed an answer and the plaintiff filed replications. At the conclusion of the evidence, the case was reported to the Law Court. Upon so much of the evidence as is legally admissible, the Law Court is to render such judgment as the law and equity require.

The case is stated in the opinion.

*Taber D. Bailey,* for plaintiff.

*E. C. Ryder,* for Merchants' Fire Insurance Co.

*Philbrook & Andrews,* for Metropolitan National Bank.

SITTING: WHITEHOUSE, C. J., SAVAGE, CORNISH, KING, BIRD, HANSON, JJ.

WHITEHOUSE, C. J. This is a bill in equity brought by the plaintiff as admr. de bonis non of the estate of Ignatius Sargent of Machias, Maine, against the Merchants' Insurance Company of Bangor, the Metropolitan National Bank, and Charles Sargent, of Boston.

The following allegations are made in the several paragraphs of the bill:

1. Ignatius Sargent died intestate in 1887, and August 2nd of that year his son, the defendant Charles Sargent, was appointed administrator of the estate. Among the assets of the estate was a certificate of twenty shares of the defendant Insurance Company issued to the intestate Ignatius Sargent the year before he died.

2. In September, 1900, Charles Sargent transferred this certificate of stock to himself personally, without the order of the Probate Court and without the knowledge or consent of the other heirs; and in July, 1904, delivered the certificate to the defendant National Bank as collateral security for a loan of $1,600, for which

he gave his note to the bank with a power of attorney authorizing a transfer of the stock.

3. In January, 1905, he gave to the bank a renewal note for the loan of $1,600, stating that the stock was held by the bank as collateral security.

4. No part of the principal of this loan or of the interest thereon has ever been paid by Charles Sargent or any one in his behalf.

5. September 9, 1902, by order of the Probate Court, Charles Sargent was removed as administrator, and there was no administrator of the estate until the appointment of the plaintiff in May, 1909.

6. In May, 1908, the Metropolitan Bank brought a bill in equity against the Merchants' Insurance Company, asking that a new certificate of the 20 shares of stock be issued to the bank upon the surrender of the old one held by it.

In August, 1908, the Insurance Company brought a bill in the nature of an interpleader against the Metropolitan Bank, Charles Sargent of Boston, Ignatius M. Sargent of Machias and Lincoln H. Newcomb of Eastport, who was represented to be admr. de bonis non of the estate of Ignatius Sargent.

January 15, 1909, a final decree was signed and filed in the case, whereby the Insurance Company was ordered to issue to the Metropolitan Bank a new certificate for the 20 shares of stock in question, upon surrender of the old certificate, and it was declared that neither Ignatius M. Sargent, nor Lincoln H. Newcomb, either personally or as admr. de bonis non, had any right or title to the stock.

7. In pursuance of this decree, the Insurance Company issued a new certificate to the bank and paid to the bank the accumulated dividends on the stock amounting to $619.92.

8. The plaintiff further says that Lincoln H. Newcomb was never admr. de bonis non of the estate of Ignatius Sargent, that there was no legal representative of the estate in said equity suit, that the estate was not made a party to it, that the court had no jurisdiction over it, and that the decree entered in that suit was without legal force or effect upon the estate.

9. The plaintiff alleges that Charles Sargent, as administrator, had no authority to transfer said certificate of stock to himself per-

sonally and pledge the same for his personal debt, that the Metropolitan Bank had notice of that fact, that it was a fraud upon the estate for the administrator so to transfer and pledge the stock, and that the estate of Ignatius Sargent is the rightful owner of the stock.

10. Finally, the plaintiff states that the stock in question has a market value of $175 per share, that it is pledged for only $80 per share, that the dividends are more than sufficient to pay the interest on the loan, and even if the transaction of pledging the stock to the bank is valid, that it is inequitable for the bank to retain the whole of the stock for a debt amounting to only one-half of it.

The plaintiff accordingly prays that the Insurance Company may be ordered to cancel the certificate of stock issued to the Metropolitan Bank and issue a new one to the estate of Ignatius Sargent and pay to the plaintiff the dividends accrued thereon. But if the transfer of stock by Charles Sargent to the bank is valid, then upon the payment by the estate to the bank of the amount of the loan with interest, less the dividends received by the bank, that the bank be ordered to transfer the certificate of stock to the estate, and the Insurance Company ordered to record such transfer upon the books of the company.

There is also a prayer for general relief.

The Metropolitan Bank filed a demurrer to the plaintiff's bill, and both the bank and the insurance company have filed answers, but the bill has been taken pro confesso against Charles Sargent. The case is reported to the Law Court on bill, demurrer, answers and proof.

The causes of demurrer assigned by the bank are; first, that the matters set out in the bill are insufficient to entitle the plaintiff to equitable relief; second, that the plaintiff is not entitled to the relief prayed for because the decree in the bill of interpleader filed by the bank, a copy of which is annexed to the bill, is still in full force; and because the plaintiff has an adequate remedy at law.

For the purpose of considering the sufficiency of the plaintiff's bill, the demurrer admits all allegations of fact well pleaded. As above shown, the bill now before the court alleges that Lincoln H. Newcomb was never admr. de bonis non of the estate of Ignatius Sargent; that he never represented the estate in any capacity; that

there was no legal representative of the estate in court in the interpleader suit; and that the estate was not a party to that suit. These allegations of fact are admitted by the demurrer.

It is also alleged in the bill, and admitted by the demurrer, that upon the record of the bill of interpleader Lincoln H. Newcomb was made a party to that suit "under the name and style of administrator de bonis non of the estate of Ignatius Sargent and that the bill of interpleader was taken pro confesso as to him in that capacity. Thus, from an examination of the bill and demurrer in this suit, it satisfactorily appears that the decree in this interpleader case was erroneous, that it was entered through mistake, but that the error is not apparent upon the face of the record.

In support of the demurrer, it is contended by counsel for the bank that inasmuch as the prayer in the present bill asks for a cancellation of the certificate of stock issued to the bank and the issuance of a new certificate to the estate of Ignatius Sargent, it is equivalent to a prayer for the revocation of the decree in the interpleader suit, and that the only method by which the plaintiff could attack that decree was by a strict bill of review.

On the other hand, the plaintiff contends that inasmuch as the want of a necessary party in the former suit is not an error or defect apparent on the record, the decree cannot be attacked by the ordinary bill of review, and admits that his bill is not strictly a bill of review, but an original bill brought by the plaintiff as administrator of the estate, primarily to obtain affirmative relief for the benefit of the heirs, and incidentally to impeach the decree in the former suit, so far as that decree, void against the estate of Ignatius Sargent, has interfered with the property and impaired the rights of the estate.

It is undoubtedly a general rule in chancery practice that a decree signed and entered cannot be impeached or vacated except by a bill of review, or by an original bill for fraud. But there are exceptions to this general rule in general chancery practice as well as under our statutes. Thus, in cases not heard on the merits, a decree obtained through surprise, accident or mistake may be impeached by an original bill for that purpose in general chancery practice. *Herberts* v. *Rowles,* 30 Md., 278; *Bank* v. *Eccleston,* 48 Md., 145; *Cawley* v. *Leonard,* 28 N. J. Eq., 467; Whitehouse Eq. Prac., 302.

In *Arnold* v. *Moyes,* 1 Led. (Tenn.), 308, a decree had been entered apparently binding upon the estate of a deceased person at a time when, by reason of his death and of the failure to bring in the administrator, the estate was without representation in court; and it was held that it was not "error apparent" because the defect was not apparent on the records, and that it did not furnish the basis for an ordinary bill of review.

Furthermore, it is said to be the prevailing rule that when the return or record shows the service of a bill to have been made upon the proper person or official, this can be contradicted in a collateral proceeding so as to show the judgment void. *Raymond* v. *Rockland Co.,* 40 Conn., 401; *State Ins. Co.,* v. *Waterhouse,* 78 Iowa, 674; *Jones* v. *Ore Co.,* 41 N. J. Eq. (3 Atl. 517); Vanfleet's Collateral Attack, 462.

The plaintiff's present bill substantially meets all of the requirements of an original bill in the nature of a bill to impeach a decree. It not only states the decree complained of, but annexes a copy of it to the bill. It sufficiently alleges the entire failure of any representation of the estate in the former suit as the ground upon which the incidental impeachment of the decree is sought, and states the facts and circumstances by which it is made apparent that but for the mistake in serving the bill upon L. H. Newcomb as admr. of the estate there would have been no decree pro confesso against the estate.

Nor does the present bill disclose any want of necessary parties. It appears from the bill and demurrer to be admitted that L. H. Newcomb was not a necessary party and not even a proper party to the original bill, and he is obviously not a necessary or proper party to this bill. It appears from the evidence in the case that Ignatius M. Sargent was one of the heirs of the intestate. His rights and interests in the estate and the matters in controversy are sufficiently represented by the present plaintiff, the admr. de bonis non. *Strout* v. *Lord,* 103 Maine, 410.

The special prayer of this bill is entirely sufficient to authorize the court to grant the specific relief sought by the plaintiff, viz., the cancellation of the certificate of stock issued to the bank, and the issue of a new certificate to the plaintiff; and there is also an alternative prayer for such relief as the plaintiff might be found

entitled to, if the court should hold that the bank acquired a good title to the stock, as collateral security, by means of the transfer and pledge of the same from Charles Sargent. The prayer for general relief also serves to aid and supplement the special prayer by expanding the special relief sought with further relief of the same nature, or supplying the place of the special prayer by giving other relief of a different nature. *McKim* v. *Odom,* 12 Maine, 106; *Burleigh* v. *White,* 70 Maine, 130; *Miller* v. *Jamieson,* 24 N. J. Eq., 43. If, therefore, as a preliminary to the granting of the special prayers, it is necessary that there should be a formal decree in this suit, vacating the decree in the former suit, it will be relief in furtherance of the special relief sought in this bill.

The bill is properly brought in the name of this plaintiff as admr. de bonis non. The case is clearly distinguishable from *Waterman* v. *Dockray,* 78 Maine, 139, and *Hodge* v. *Hodge,* 90 Maine, 505. Here, the suit is to recover and restore to the representative of the estate certain shares of stock which remain in specie, or in the alternative, to redeem them from the bank to which they are assigned and pledged. *Stevens* v. *Goodell,* 44 Maine, 34.

It is accordingly the opinion of the court that the demurrer should be overruled. The case comes to the Law Court on report, and the questions raised upon the plaintiff's bill, the answer filed by the Metropolitan Bank and the evidence introduced on both sides must therefore be now examined.

It is alleged in the answer of the bank that Charles Sargent had full right and authority to transfer the stock to himself personally and to pledge the same for his personal debt; that the bank made the loan and took the certificate of stock as collateral security in the regular course of business and in good faith, without notice or knowledge of any facts which in any way affected the validity of Charles Sargent's title to the certificate or his right or authority to pledge the same; that the Merchants' Insurance Company issued the new certificate of stock to the bank by virtue of the decree in the suit of interpleader; and that the estate of Ignatius Sargent has no title to the stock or the dividends thereon.

It is therefore earnestly contended that the bank is an innocent holder for value and should be fully protected.

In addition to the facts alleged in the bill and admitted by the demurrer, the following facts appear in evidence:

The bond of Charles Sargent as administrator of the estate of Ignatius Sargent was duly filed and approved August 2, 1887. September 9, 1902, he was removed from office for neglecting and refusing to render an account of his administration to the Probate Court; and July 9, 1907, there was a decree for the appointment of Lincoln H. Newcomb as administrator de bonis non, but no bond was ever filed by him, letters of administration were never issued to him, his appointment was never perfected, and he was never qualified to enter upon the administration of the estate. There is nothing in the case showing that any inventory of the estate was ever filed in the Probate Court; but according to a certificate signed by Ignatius M. Sargent and printed as a part of the report of the case, the value of the estate did not exceed $25,000, the value of the real estate having been estimated at $14,000, and the personal estate at $11,000.

With reference to the stock of the Merchants' Insurance Company in question, which was a part of the assets of the estate, Ignatius M. Sargent testifies that there were four brothers who were the heirs of the intestate Ignatius Sargent, viz., Charles, the administrator, Henry, Daniel and himself; that they had a conference and agreed that this stock should go to the highest bidder and that he, Ignatius M., was the highest bidder; that he paid no money for it, but it was understood that it was to be charged to him and accounted for in the distribution of the estate, and that Charles, as administrator, paid him one dividend on the stock in January, 1900. It does not appear, however, that there has ever been any order of the Probate Court for the distribution of the assets of the estate, or that Ignatius ever made any request that the old certificate be surrendered to the Insurance Company and a new certificate issued to him; but, as already shown, the old certificate remained in possession of Charles as administrator, and in September, 1900, was assigned by him as administrator to himself personally, and in July, 1904, assigned by him to the Metropolitan Bank as collateral security for the loan. But in a letter written by Charles to his brother Ingatius, in January, 1903, he states that he had written to the

Insurance Company that all persons in interest had agreed that a new certificate might be issued in the name of his brother Ignatius.

These facts, however, thus disclosed by the testimony of Ignatius, and the Probate records, were wholly unknown to the officers of the Metropolitan Bank at the time of the transfer of the certificate of stock to the bank in 1904. In relation to that transaction, Mr. Noyes, president of the bank, testifies that he knew Charles's uncle, John Sargent, who was doing business at their bank; that he "brought Charles into the bank and introduced him as his nephew and gave a very strong endorsement as to his integrity and business;" that Charles thereupon came with this original certificate of stock as an applicant for a loan of $1,600; that he had already used it as collateral to borrow at a bank in Quincy, and the cashier of that bank came in with him to the Metropolitan Bank in Boston where he also wished to do business; that he "did not have any fact of any kind whatever at that time to lead him to suspect or to believe that Charles Sargent, as heir, did not own that certificate of stock honestly and in good faith; that Charles affirmed his ownership and right to it, saying he was receiving dividends on it;" and the fact that it had been accepted at the bank in Quincy "helped confirm his statement." Mr. Noyes says he noticed that the certificate stood in the name of the deceased, Ignatius Sargent, and that it had been transferred by Charles as administrator to himself personally, and called Charles's attention to the fact; but Charles said, "That is all right, that is my stock; I am receiving dividends on it." The fact that the certificate had not been transferred on the books of the company did not raise any question in his mind as to the legality of the transaction; because, he says, they often accepted as collateral security stock with a transfer signed in blank. He further states that John Sargent told him Charles had practiced law but had gone into business, and he supposed that he knew what he was about and had a legal right to do what he was doing.

It is not in controversy that it was understood by the president of the bank that Charles Sargent was pledging that stock for a personal loan, and it cannot be doubted that it was accepted by Mr. Noyes in good faith in the ordinary course of business, in the confident belief that the stock had become the property of Charles Sargent, and that he had good right and lawful authority to use it

as security for his personal debt. The best evidence that Noyes acted in good faith is the fact itself that he actually loaned and delivered to the borrower $1,600 in money as an ordinary banking transaction on the strength of that security.

In *Carter* v. *National Bank,* 71 Maine, it is said by this court:

"The law recognizes a distinction between an ordinary trustee and an executor. The former has possession for custody and the latter for administration. The latter has a necessary incidental power of disposal which the former does not. And as a consequence when one purchases of the latter stocks or other securities bearing on their face the revelation of a trust, he may safely do so in the absence of notice or knowledge of any intended breach of trust on the part of the executor; but if he purchase like property of an ordinary trustee, the law imposes upon him the duty of inquiring into the right of the trustee to change the securities."

See also the authorities there cited in support of these statements.

In *Field* v. *Schieffelin,* 7 Johns, Ch. 150 (cited in *Carter* v. *Bank, supra*) Chancellor Kent says:

"The purchaser is safe, if he is no party to any fraud in the executor and has no knowledge or proof that the executor intended to misapply the proceeds, or was in fact by the very transaction applying them to the extinguishment of his own private debt. The great difficulty has been, to determine how far the purchaser dealt at his peril when he knew from the very face of the proceeding that the executor was applying the assets to his own private purposes, as the payment of his own debt. The later and better doctrine is, that in such a case, he does buy at his peril; but that if he has no such proof or knowledge, he is not bound to inquire into the state of the trust, because he has no means to support the inquiry and he may safely repose on the general presumption that the executor is in the due execution of his trust."

See also 18 Cyc. L. & P., 289, where the general rule is thus stated:

"A third person who, in dealing with the representative, acted in good faith and without notice of the representative's bad faith, and parted with consideration, will be protected in the transaction."

While it is undoubtedly true that "no proposition of law is bet-

ter established than that an executor has an absolute control over all the personal effects of his testator" (*Peterson* v. *Bank,* 32 N. Y., 21; *Carter* v. *Bank,* supra); it is equally true that "an administrator has no power of charging the effects in his hands to be administered, by any contract originating with himself." *Sumner, Admr.* v. *Williams,* 8 Mass., 198. It is common experience, however, for the heirs to an estate, by virtue of a mutual agreement for that purpose, to divide among themselves specific items of the personal estate, and when these items thus assigned to each of the heirs are stated by the administrator in his account rendered to the Probate Court, and such conventional distribution is approved by the order of distribution and the settlement of the estate, it is undoubtedly conclusive upon all the parties interested. It is not in conflict with the statutory method recognized in *Hanscom* v. *Marston,* 82 Maine, 288.

In the case at bar, it has been seen that the heirs agreed to have the stock transferred to the highest bidder, and if Charles had been the highest bidder, and the agreement had been ratified in the settlement of the estate, a transfer of the certificate from Charles as administrator to himself personally, made in pursuance of such an agreement, would have been evidence of the transaction to accompany his application for the issuance of a new certificate in his own name, and not a badge of fraud to put the purchaser upon inquiry in regard to the "state of the trust." Charles Sargent had been highly commended by John Sargent, a business man who had the confidence of the bank. He was in possession of a certificate of stock which he asserted to be his property, and which had upon it a transfer to himself that was at least consistent with his good faith and claim of ownership. The president of the bank "had no proof or knowledge" and in fact no suspicion of any defect in the applicant's title to the stock, and "safely reposed" upon the presumption that the administrator had acquired title to the stock in the course of a due execution of his trust, considered in connection with the recommendation of the applicant and all the circumstances attending the loan. He was a bona fide holder for value who parted with the consideration without suspicion of any bad faith on the part of the borrowers, or any notice of a defect in his title to the stock. He is entitled to be protected in the transaction. The estate

was protected by the administrator's official bond duly filed and approved.

It has been seen that in the bill of interpleader instituted by the Merchants' Insurance Company, L. H. Newcomb was alleged to be administrator de bonis non of the estate of Ignatius Sargent, service of the bill was made upon him as a legal representative of the estate, and the bill was taken pro confesso as to him in his alleged capacity as administrator. But it appears from the records that L. H. Newcomb never filed any bond as administrator, letters of administration were never issued to him, he was never qualified to act as administrator, he never did act in that capacity, and never was administrator of that estate. Service of the bill upon him as administrator gave the court no jurisdiction over the estate, and the decree filed in that suit, though valid as to Ignatius Sargent and the Insurance Company, had no binding force or effect upon the estate of Ignatius Sargent, for the reason that the estate never was made a party to the suit and was never heard in court. If it were otherwise, in the absence of an administrator's official bond, there would be no adequate protection against fraudulent collusion between a claimant against an estate and a person falsely alleged to be administrator and wrongfully made a party to a suit.

The decree entered in the interpleader suit apparently declares that the estate of Ignatius Sargent had no right or title to the stock in question. It is the conclusion of the court, however, after a hearing upon the merits in the case at bar, that the estate of Ignatius Sargent then had, and by its legal representative here in court, now has, an equitable right to redeem the stock held by the bank as collateral security, and that upon payment to the bank of the amount of the debt and interest, less the dividends received by the bank, within sixty days from the time of the filing of the decree in this suit, the certificate of stock shall be assigned and delivered to the plaintiff, provided, however, that the bank may retain from the dividends received the sum of seventy-five dollars toward counsel fees and other expenses incurred in the defence of this suit. It is also the opinion of the court that the former decree as to the rights of the estate of Ignatius Sargent, and L. H. Newcomb alleged to be administrator de bonis non, was entered under misapprehension and mistake arising from the erroneous assumption

that L. H. Newcomb was legally authorized to represent the estate
as administrator de bonis bon in the interpleader suit; and in order
that there may not appear upon the records of this court two con-
flicting decrees in full force and effect relating to the same matter,
that part of the former decree, which purports to declare that the
estate of Ignatius Sargent had no right or title to the stock in ques-
tion, is revoked and annulled, and a new decree is to be made in
accordance with this opinion, respecting the rights of said estate
and of this plaintiff as administrator thereof in and to the twenty
shares of stock in question.

<div align="center">

*Bill sustained.*

*Decree in accordance with opinion.*