F. P. PHILBRICK v. I. T. JOHNSON.

October Term, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed February 19, 1917.

*Equity—Laches—Bill of Review—Delay in Seeking Relief— Discretion of Court.*

Laches in seeking relief from a decree of a court of competent jurisdiction may defeat relief independently of the merits of the case.

A bill in equity in the nature of a bill of review is an appropriate remedy by which to seek to impeach a decree rendered by the court of chancery.

Courts are inclined to be indulgent in opening decrees in chancery entered on default, and such applications, if timely, will generally be granted on any reasonable showing that the defendant probably has a meritorious defence and that he was not culpably negligent in not making it in time.

Equity will lend its aid only to those who seek it with reasonable diligence, and a defendant who seeks relief against a default decree must proceed within a reasonable time after knowledge thereof or he will be barred by laches.

What constitutes laches depends largely upon circumstances, but it is of the essence of laches that the party whose delay is in question shall have been blamable therefor in the contemplation of equity.

The decision of the trial court upon the question of laches is so much a question of discretion, dependent on the facts that it will not be disturbed on appeal unless clearly shown to be wrong.

Where plaintiff in a bill of review, brought to impeach a default decree obtained by defendant for the purpose of confirming his title to certain real estate, delayed without excuse for eight years after knowledge of the decree before bringing his bill, during which time defendant remained in possession, and, in reliance upon the decree, expended $1,000 on improvements, and the land increased in value, *held*, the finding of the chancellor that plaintiff's claim was barred by laches would not be disturbed.

APPEAL IN CHANCERY. Heard on bill, answer and facts found by the chancellor, in vacation after the June Term, 1915, Windsor County, *Fish,* chancellor. Decree for the defendant. Plaintiff appealed.

*W. E. Tracy* and *M. P. Maurice* for the plaintiff.

The orator owed no duty to the defendant who was a trespasser, and so there can be no question of laches here. Laches is the neglect to do something which by law a man is obliged or in duty bound to do. *Anderson* v. *Northrup,* 30 Fla. 612, 12 So. 318; *Sebag* v. *Abitol,* 4 M. & S. 462; 2 E. C. L. 39; *Demuth* v. *Old Town Bank,* 85 Md. 315, 37 Atl. 266; *King et als.* v. *White et als.,* 63 Vt. 158; *Houk* v. *Houk,* 76 Atl. 581, 112 Md. 122; *Allis* v. *Hall,* 56 Atl. 637, 76 Conn. 322.

Mere delay does not constitute laches. 16 Cyc. 153, and cases cited in note 36; *People* v. *Scannel,* N. Y. Supp. 679-680; *Bell* v. *Wood,* 94 Va. 677, 27 S. E. 504-06.

One who has a good legal title may reply on it and is not chargeable with laches for so doing when he afterwards brings a suit in equity to remove an adverse claim. *Cottrell* v. *Watkins,* 89 Va. 801, 19 L. R. A. 754, 37 Am. St. Rep. 897. 16 Cyc. 175, citing *Chandler* v. *White,* 84 Ill. 435; *Cook* v. *Lasher,* 73 Fed. 701, 19 C. C. A. 654; *Hays* v. *Marsh,* 123 Iowa 81, 98 N. W. 604.

*Davis & Davis* for the defendant.

Laches involves prejudice, actual or implied, resulting from a delay. It does not arise from delay alone, but from delay that works a disadvantage to another. *Wilder's Exr.* v. *Wilder et al.,* 82 Vt. 128; *Ordway* v. *Farrow,* 79 Vt. 192.

The question of laches is to be decided upon the peculiar circumstances of each case. 16 Cyc. 152 B; *King et al.* v. *White & Hammond,* 63 Vt. 158, 164-5-6 and cases cited.

The plaintiff owed a duty to the defendant to assert his claim seasonably. A court of equity will not grant relief, unless the parties seeking it move as promptly as the situation of the case will permit. *Stockbridge Iron Co.* v. *Hudson Iron Co.,* 107 Mass. 304; *Tash* v. *Adams,* 10 Cush. 252; *Fuller* v. *Melrose,* 1 Allen 166; *Fuller* v. *Hovey,* 2 Allen 324; *Plymouth* v. *Mills,* 7 Allen 438; *Peabody* v. *Flint,* 6 Allen 52; *Merchants' Bank* v. *Sheldon,* 7 Allen 489; *Evans* v. *Bacon,* 99 Mass. 213.

TAYLOR, J.   This is a bill in chancery in the nature of a bill
of review to impeach a decree rendered in the court of chancery
for Windsor County at the June Term, 1906, in which cause
this defendant was plaintiff and the plaintiff here and others
were defendants.   The prayer of the bill is that said decree be
set aside and declared null and void and that this plaintiff be
reinstated in his rights to certain land which was the subject
matter of the former suit.   The case was heard on the bill,
answer and facts found by the chancellor and resulted in a
decree dismissing the bill, from which the plaintiff has appealed.

The land in question is a tract of about five acres situated
on both sides of the Lamoille River in the town of Johnson at
what is called the "Lower Falls."   It was formerly owned by
the plaintiff's father, Horace Philbrick, in his lifetime and at his
death intestate descended to his heirs, who were the defendants
in the original suit.   There was an arrangement among the heirs
that the plaintiff should have the land and he had paid the taxes
on it after his mother's death in 1882 until it passed into the de-
fendant's possession in 1899.   Before the decree in the original
suit, this plaintiff obtained deeds of the land from the other heirs
but did not cause them to be recorded until after the bringing of
this suit and the defendant had no notice of the conveyances
until the time of trial.   In 1898 the defendant opened negotia-
tions with the plaintiff and the other heirs of Horace Philbrick
for the purchase of the land for use, with other land already ac-
quired, as a camp ground for holding religious meetings.   As a
result of these negotiations he secured an agreement not under
seal, bearing date May 31, 1899, and signed by all the heirs ex-
cept the plaintiff, by which they engaged to convey the land on
or before the first day of October, 1899, in consideration of fifty
dollars to be paid by the defendant on the execution and delivery
of the deed.   The agreement also gave the defendant the right
to enter upon and enjoy the premises at once.   Prior to securing
the agreement signed by the other heirs, the defendant received
a letter from the plaintiff stating that he had determined to leave
the matter of a sale of the land to his brothers and sisters and
that what they agreed to he would fully back up.   Relying upon
the plaintiff's letter and the agreement signed by the other heirs,
the defendant took possession of the premises in the summer of
1899 and expended on the land in excess of $2,000 in buildings
and other improvements.   In September, within the time contem-

plated by the agreement, he asked for a deed and tendered payment of the purchase money, but was informed by the heirs who had signed the agreement that the plaintiff refused to join in the conveyance. Under date of September 30, 1899, the plaintiff wrote the defendant a letter notifying him that the land was not for sale and that he would have no further business with him.

The defendant remained in possession of the premises unmolested by the plaintiff, making further improvements and using the land as a camp ground, until the fall of 1905. Plaintiff, whose residence then was and is now in New Jersey, visited Johnson and gave out that the defendant had no right in the land. Correspondence ensued in which defendant said he should ask the court of chancery in December next to give him a deed, "if you and yours are not willing to sign without this expense"; to which plaintiff replied: "You cannot bring your petition any too soon to suit me and I want you to take notice now that before we get through I shall ask you to account for all damage done to the property in the way of cutting timber or otherwise."

The defendant took steps to have an action commenced but too late to make it returnable to the December term. Plaintiff arranged to defend such an action if brought at the December term; but it not having been brought did nothing with reference to a defence at the following term and did not have actual notice of the bringing of the action until December, 1906. The defendants in the original suit were all non-residents and the notice was by publication in accordance with the statute respecting notice in such cases. There being no appearance for the defendants, the bill was taken as confessed and it was ordered and decreed that the plaintiff (this defendant) pay to the clerk of the court for the benefit of the defendants $50 by a day fixed; and that unless the defendants execute and deliver to the plaintiff (this defendant) a deed of the premises by August 1, 1906, the decree should operate as a conveyance.

The ground of this bill is fraud in procuring the decree in the original suit and want of notice and an opportunity to make a defence therein. The chancellor's findings eliminate from the case all questions of fraud. He also finds that the notice by publication followed the statute for such notice to non-resident defendants. The answer assigns laches as a ground of defence and, in view of the chancellor's disposition of the case, his findings bearing upon that question become important. The de-

18

fendant has remained in possession since the decree, using and occupying the land as before for camp-meeting purposes. He has continued to make improvements upon the premises, until in the aggregate in the vicinity of $3,000 has thus been expended. These improvements have been made in good faith, the defendant understanding that he was the owner of the land and that they were being made for his benefit and that of the church which he represents. The defendant treats the land as held in trust for religious purposes and has made a will accordingly. The land was worth at the time the purchase was negotiated "something more than $50"; but the fact that it was desired for camp-meeting purposes entered into the fixing of the price. The lumber removed from the land to prepare it for a camp ground was worth standing $250. During the past four years the water power which could be developed on the property has come to be of some consequence and is now worth $1,000 to $2,000. The plaintiff had knowledge of the former suit and the adverse decree in December 1906 but did not communicate with the defendant nor make any claim upon him respecting the land until the bringing of this action in December, 1914. He had consulted counsel and from December, 1906, had had under consideration the matter of bringing some proceeding against the defendant to determine his rights in the premises.

Upon consideration of all the evidence the chancellor held that after so long a lapse of time the plaintiff was not entitled to relief in equity, regardless of any right which he might at some time have had against the defendant and for that reason dismissed the bill. Plaintiff's counsel treat laches as the only question for consideration. Evidently the chancellor disposed of the case on that ground alone, so we come at once to the question whether in the circumstances, plaintiff's delay for eight years to assert his rights should bar this action.

Plaintiff treats the question as an ordinary question of laches when one brings a suit in equity to remove an adverse claim or sets up title in himself in defence, and cites authorities to the proposition that to constitute laches there must be a legal duty to do some act and a failure to do that act with consequent prejudice to the adverse party. He claims that the defendant was a trespasser and that he owed him no duty to act sooner. But such is not the real question here. He is asking the court of chancery to vacate a decree rendered in all respects in conformity

with law that he may litigate the precise question that it has once decided. It is not claimed that the court was without jurisdiction to render the decree sought to be impeached; and the facts found leave him without ground of complaint, except that the statute providing for notice by publication in such cases did not prove effectual to give him actual notice of the pendency of the suit. His failure to receive such notice was in no way chargeable to the defendant. His conduct cannot be judged solely with reference to the merits of the controversy between him and the defendant, for laches in seeking relief from a decree of a court of competent jurisdiction may defeat relief independently of the merits of the case. *Wooster* v. *Woodhull,* 1 John. Ch. (N. Y.) 540; *Hall* v. *Lamb,* 28 Vt. 85.

Though plaintiff has procured a finding that during the whole eight years before he acted after learning of the decree, he had contemplated bringing some action to assert his rights, he offers no explanation in his bill or proof why the bringing of this suit was so long delayed. We are to treat the case as though there was no impediment to an earlier prosecution of the suit. See *King* v. *White,* 63 Vt. 158, 21 Atl. 535, 25 Am. St. Rep. 752. Unlike many of the states we have no statute or rule of court prescribing the procedure to vacate a default decree after it has been enrolled, where the defendant has not been personally served with process. We have no occasion to consider whether any other remedy than an original bill in the nature of a bill of review is appropriate. The plaintiff has elected to seek his remedy in that manner, which is generally recognized as appropriate. 1 Whit. Eq. Pr. 376; *Corbett* v. *Craven,* 196 Mass. 319, 82 N. E. 37. Nor do we consider whether application for leave to file such a bill is necessary, the question not having been raised. See 10 R. C. L. 575.

Courts are inclined to be indulgent in opening decrees entered on default. It was held in *Hall* v. *Lamb,* 28 Vt. 85, that the chancellor has power to vacate a decree *pro confesso,* even after enrollment, for the purpose of giving the defendant an opportunity of defending the bill on its merits when deprived of that defence by mistake, accident or even negligence. At least, such applications, if timely, will generally be granted on any reasonable showing that the defendant probably has a meritorious defence and that he was not culpably negligent in not making it in time. 10 R. C. L. 540.

At the same time there is no rule of equity more familiar than that it will lend its aid only to those who seek it with reasonable diligence. "Equity helps the vigilant, not the dormant," is a maxim of extended application, designed to promote diligence on the part of suitors, discourage laches and prevent the enforcement of stale demands. *French* v. *Raymond,* 83 Vt. 265, 75 Atl. 267; *Gillett* v. *Chicago Title and Trust Co.,* 230 Ill. 373, 82 N. E. 891; *Thomas* v. *Van Meter,* 164 Ill. 304, 45 N. E. 405. Mr. Whitehouse states the general rule to be that a default decree may be opened to enable a defendant to make a meritorious defence which has not been heard through surprise, accident or mistake, with the qualification that laches will defeat the relief. 1 Whit. Eq. Pr. 375.

By analogy, the rule everywhere enforced as to bills in the nature of bills of review for new matter should be regarded as applying to the instant case. The general rule is that such bills should be filed as soon as reasonably may be after discovery of the new matter; and leave to file will always be denied on the ground of laches, if there is unreasonable delay. Story's Eq. Pl. § 423; 1 Whit. Eq. Pr. 287; 10 R. C. L. 575; notes, 6 Ann. Cas. 332, and 14 Ann. Cas. 195; *Central Trust Co.* v. *Grant Locomotive Works,* 135 U. S. 207, 34 L. ed. 97. It follows that a defendant who seeks relief against a default decree must proceed within a reasonable time after knowledge thereof or he will be barred by laches. See *Seymour* v. *Alkire,* 47 W. Va. 302, 34 S. E. 953.

What will constitute laches depends largely upon the circumstances of the particular case. The term signifies not only an undue lapse of time but also negligence in failing to act more promptly. It is therefore of the essence of laches that the party whose delay is in question shall have been blamable therefor, in the contemplation of equity. 10 R. C. L. 405. The omission to assert a right for an unreasonable and unexplained lapse of time, where the delay has been prejudicial to the adverse party rendering it inequitable to enforce the right, will always bar relief in equity.

Moreover, the ruling upon the question involves the exercise of the court's discretion. It is held in some jurisdictions that the opening of a decree in chancery entered on default rests in the sound discretion of the chancellor, which will not be reviewed unless abuse of discretion is shown or the decree is the result of mis-

take or imposition practiced on the court. *Sandford* v. *Wellborn,* 85 N. J. Eq. 577, 96 Atl. 1018; *Holloway* v. *Safe Deposit & Trust Co.,* 124 Md. 539, 93 Atl. 154; *Whitlock Cordage Co.* v. *Hine,* 125 Md. 96, 93 Atl. 431; *Bailey* v. *Merchants' Ins. Co.,* 110 Me. 348, 86 Atl. 328. In *Hall* v. *Lamb,* 28 Vt. 85, *Isham,* J., quotes with approval Chancellor Kent's observation in *Wooster* v. *Woodhull,* 1 Johns. Ch. (N. Y.) 539, that such applications are addressed to the discretion of the court.

A clearer statement of the rule is found in *Leathers* v. *Stewart,* 108 Me. 96, 79 Atl. 16, Ann. Cas. 1913 B, 366, where it is said that the circumstances in a given case which are claimed to constitute laches are questions of fact; but the conclusion whether, upon the facts, it would be inequitable to enforce the right, and whether the plaintiff is barred by laches, involves a question of law. Nevertheless, the decision of the court upon the question of laches is so much a matter of discretion, dependent upon the facts, that it should not be disturbed on appeal unless clearly shown to be wrong.

Various circumstances have been held to support the claim of laches. If it appears that the adverse party has by the delay been subjected to any hardship that might have been avoided by reasonably prompt proceedings, a court of equity will refuse relief. Thus, where the property in controversy has greatly increased in value during the delay,' or the adverse party has made expensive improvements upon it, the period of time necessary to constitute laches will be shortened. 10 R. C. L. 400; 16 Cyc. 161.

In this case there was an unexcused and inexcusable delay of eight years after full knowledge of the decree. The defendant was suffered to remain in undisputed possession of the land, relying upon the decree as confirming his title, and to expend about $1,000 more in improvements upon it. Then, when the value of the land had increased until it became worthwhile to make it a subject of litigation, plaintiff broke the silence and asked the court of chancery to vacate its decree and permit him to litigate what would appear to be a doubtful claim. In view of all the facts, we do not find sufficient reason shown to disturb the chancellor's holding that plaintiff's claim was barred by laches.

*Decree affirmed and cause remanded.*

POWERS, J., did not sit.