EMMA L. HOLMAN, BY JUSTIN M. HOLMAN, GUARDIAN, *v.* RANDOLPH NATIONAL BANK.
RANDOLPH NATIONAL BANK *v.* JUSTIN M. HOLMAN, GUARDIAN OF EMMA L. HOLMAN.

May Term, 1924.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed October 7, 1924.

*Banks and Banking—Implied Agreement of Bank with Deposi- tor—Necessity of Demand for Repayment of Deposit— Statute of Limitation—Injunction—Prerequisites to En- joining Action at Law Commenced within Statutory Period —Burden of Proving Laches—Laches Not Imputable to Person of Unsound Mind—Conclusion of Law—What Is Admitted by Demurrer to Bill—Incidental Powers of National Banks—Laches Not Shown.*

1. A bank receiving a deposit impliedly agrees to repay same on demand.

2. Where bank in receiving deposit agreed to repay on demand, such demand, being an integral and essential part of the contract, no right of action accrues for the money deposited without previous demand and refusal by the bank.

3. In such a case, the Statute of Limitations did not begin to run against right to recover money so deposited, until demand for payment was made of the bank and payment refused.

4. In action against a bank to recover deposit made 32 years prior thereto, suit being instituted immediately following demand for payment by bank and its refusal, facts alleged in pleading *held* not to support claimed estoppel.

5. When a suit at law is brought before time fixed by Statute of Limitations has expired, a court of equity will not interfere with prosecution of suit on ground of laches, unless such unusual or extraordinary circumstances are shown by the bill as make such prosecution inequitable.

6. A bank, seeking to enjoin a depositor's action at law, instituted before expiration of time fixed by Statute of Limitations, on the ground of laches, has the burden of proving such facts as will make it inequitable to permit action at law to proceed.

7. When the person claimed to have been guilty of laches has become mentally incompetent, the question of laches must be determined solely with reference to the time before such incompetency occurred, as laches cannot be imputed to a person of unsound mind.

8. Averment, in a bill brought by bank to restrain action at law by guardian of a depositor to recover deposit made by ward, that loss of evidence contained in books which bank had destroyed was due solely and directly to failure of depositor to demand repayment within reasonable time, and within 20 years after deposit, is a conclusion of law.

9. Demurrer admits truth of facts well stated in bill, so far as relevant and well pleaded, but does not admit conclusions of law drawn therefrom, even though alleged in the bill.

10. Discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt, buying and selling, exchange, loaning money, etc., and receiving money of others on general deposit, are among the incidental powers of a national bank, in carrying on the business of banking.

11. Facts and circumstances in bill by bank to enjoin action at law of guardian of depositor, seeking to recover deposit made by

ward, *held* not to show unreasonable delay in making demand, or negligence on part of ward or guardian in failing to make it earlier, so that guardian's action was not barred by laches.

ACTION OF CONTRACT against a bank by a guardian to recover deposit made by his ward. Plea, general denial, payment, Statute of Limitations, and laches. Demurrer to paragraphs alleging laches. The bank then brought its bill in equity against guardian to enjoin him from proceeding with action at law, to which defendant also filed demurrer. The demurrer to the bill was sustained, bill adjudged insufficient and dismissed with costs, from which decree bank appealed. In the action at law, demurrer to the part of answer as above set forth was sustained and each paragraph complained of stricken out. The defendant bank excepted. The opinion states the case. *Affirmed, in each case.*

*March M. Wilson* and *Warren R. Austin* for the defendant bank.

In all cases where facts relied upon amount to an estoppel to affect a legal title, they are as available in law as in equity. *Vermont Copper Mining Co.* v. *Ormsby,* 47 Vt. 709; 21 C. J. 1118, § 121; *International Paper Co., et al.* v. *Bellows Falls Canal Co.,* 88 Vt. 93, 90 Atl. 943; *Kirk* v. *Hamilton,* 102 U. S. 68; Pom. Eq. § 804; *Boynton* v. *Hunt,* 88 Vt. 187.

Acts and omissions of guardian and ward relied upon in answer, by delay and failure to make claim now asserted, amounted to admissions that right did not exist, and justified application of doctrine of estoppel. *Goodell* v. *Brandon Natl. Bank,* 63 Vt. 303, 21 Atl. 956; *Wooley* v. *Edson,* 35 Vt. 214; *Roxbury* v. *Central Vermont R. R. Co.,* 60 Vt. 121, 140; *Douglas & Varnum* v. *Village of Morrisville,* 84 Vt. 302, 312.

The bank was entitled to defense of laches though it had other and adequate defenses at law. *Hastings* v. *Belden,* 55 Vt. 273; *Wilder's Exr.* v. *Wilder & Deavitt,* 82 Vt. 123, 72 Atl. 203; *Drake* v. *Wild,* 65 Vt. 611, 27 Atl. 427; *Galliher* v. *Cadwell,* 145 U. S. 368, 36 L. ed. 738, 12 Sup. Ct. 873; *Page* v. *Cove, Jr., Admr. et al.,* 94 Vt. 306, 309; 10 R. C. L. 396, § 143.

When one party has an unfair advantage in a suit at law,

which must necessarily make .court an instrument of injustice, equity will interfere by injunction.    14 R. C. L. 408, § 109; 2 Story Eq. § 885; *Taylor* v. *Gilman,* 25 Vt. 411; *Ordway* v. *Farrow,* 79 Vt. 192, 205, 64 Atl. 1116, 118 A. S. R. 951; *Moss Mercantile Co.* v. *First National Bank of Fayette* (Ore.), 82 Pac. 8, 2 L. R. A. (N. S.) 657.

Loss of evidence caused by delay may constitute laches. 4 Pom. Eq. (4th Ed.) § 1442; *Wilder's Exr.* v. *Wilder & Deavitt, supra; Dunham* v. *Adams* (N. J.), 88 Atl. 696.

*J. Ward Carver* and *Stanley C. Wilson* for the plaintiff.

· The facts set forth by bank in its answer to suit at law and in its bill in chancery do not constitute either laches or grounds for estoppel.    *Vermont Copper Mining Co.* v. *Ormsby,* 47 Vt. 709; *International Paper Co. et al.* v. *Bellows Falls Canal Co.,* 88 Vt. 93; *Boynton* v. *Hunt,* 88 Vt. 187; *Kirk* v. *Hamilton,* 102 U. S. 68; *Wilder's Exr.* v. *Wilder & Deavitt,* 82 Vt. 128, 72 Atl. 203; *Graves* v. *Weeks,* 19 Vt. 178.

Estoppel is available only to one who has acted in reliance on the facts averred to work the estoppel, and cannot be constituted by acts or silence unless . thereby conduct of party claiming estoppel is changed or influenced.    *Stevens* v. *Blood,* 90 Vt. 81; *Poronto* v. *Sinott,* 89 Vt. 479; *Cleveland* v. *Rand,* 90 Vt. 223; *Drouin* v. *Boston & Maine R. R. Co.,* 74 Vt. 343.

Suit cannot be brought on a certificate of deposit until demand is made.    *Bellows Falls Bank* v. *Rutland County Bank,* 40 Vt. 377.

Laches in legal significance is not merely delay, but delay that works disadvantage to another.    *Holt* v. *Ruleau,* 92 Vt. 74.

A bank and its officers are bound, in conducting its business, to exercise care which a prudent person would exercise in affairs of a similar nature and importance under similar circumstances.    7 C. J. 528, and cases cited; *Bay City Commercial Bank* v. *Chatfield,* 121 Mich. 641, 80 N. W. 712; *Stone* v. *Rottman,* 183 Mo. 552, 82 S. W. 76.

The bank, claiming to have made payment, has a full, complete, and adequate remedy at law.    *Philbrick* v. *Johnson,* 91 Vt. 270; *Holt* v. *Ruleau, supra; Page* v. *Cave,* 94 Vt. 306.

The Statute of Limitations does not begin to run in favor of a bank against a depositor, until depositor demands deposit.

Bolles on Banking, 453; *Osterling* v. *Alleghaney Trust Co.,* 260 Pa. 64; *Goodell* v. *Brandon Natl. Bank,* 63 Vt. 303; *Grafton Bank* v. *Doe et al.,* 19 Vt. 463.

WATSON, C. J. The first above entitled case is an action at law brought by Justin M. Holman as guardian of Emma L. Holman, to recover for money deposited by the latter in her name, in the Randolph National Bank on September 3, 1890, in an account evidenced by deposit book. The declaration consists of the common counts and three special counts. The latter declare upon the same principal sum of $2,200, alleged to have been deposited by said Emma L. with defendant bank on the day named above, which said sum the bank then and there received on deposit and agreed to repay the same to her or order on demand : that said deposit of $2,200 thereafterwards remained in the bank until September 8, 1923, on which day repayment thereof was duly demanded by the plaintiff, but the bank refused and still refuses to repay the same. The substantial difference between the special counts is that the first does not declare for interest on the principal sum, while each of the other two includes both, as did the demand made on the day named.

The bank filed its answer in that action, setting forth a general denial, payment, Statute of Limitations, and further, in paragraphs 4, 8, and 12 of the answer, it undertakes to defend on the ground of alleged laches arising from the long delay by Emma L. and her said guardian in making their present claim, and estoppel. To those paragraphs a demurrer was interposed on the ground that the defense of laches is peculiar to courts of equity and is not available in an action at law, and that nothing is alleged in those paragraphs showing laches on the part of Emma L. or her guardian, nor a case for estoppel.

With the case standing in that way on the pleadings, the bank brought its bill of complaint against Justin M. Holman, as such guardian (it being the second above entitled case), alleging the bringing of the action at law against it, and making the writ, answer, and demurrer therein a part of the bill of complaint, and further alleging substantially the same facts, though in some respects in enlarged form or with greater particularity, as were previously alleged in its answer filed in the case at law.

The bill alleges the receiving of the deposit in question by the bank from Emma L. on September 3, 1890, and the repayment of the same in full by the bank to her or her order prior to January 1, 1893 (the true date not known), thereby closing the account so that thereafter it never again appeared in the account books of the bank; that on the former day the bank kept, and hitherto has kept, regular and proper books of account, showing the names and deposits of all its depositors; that on September 3, 1890, the bank did not receive savings deposits, and this deposit to Emma L. was not with interest; that all the officers and directors of the bank at the time the deposit was made (naming them) died before January 1, 1914; that Osman B. Copeland became its cashier on or about October 14, 1896; that never since the time of the repayment of the deposit to her, as stated above, has Emma L. made any demand on the bank for payment thereof, nor has she within that period mentioned it to the bank or any of its officers; that at some time since 1920 Emma L. became mentally incompetent, and in consequence thereof Justin M. Holman, her husband, on or about September 8, 1923, was appointed her guardian, and on that day he made demand upon the bank for the payment of said deposit, claiming that the same was still in the possession of the bank and that no previous demand for its payment had ever been made by or for Emma L.; that the bank through its cashier then and there denied that it held the deposit mentioned, and refused payment, whereupon the action at law was immediately brought to recover the sum demanded including interest thereon.

The bill further alleges that about January 1, 1913, the bank moved its place of business to a new location, and acting on the advice of counsel, it then destroyed its book of account which showed the deposit in question, and the book which showed its repayment, as stated above, together with other old books and records of the bank, said books being so destroyed relying on the fact that for more than twenty years no claim or demand had been made by Emma L., or any one else in conflict with the books of account of the bank then in existence, and which showed that she had not said deposit. The bill reaffirms and asserts to be true each and all the facts alleged in the answer of the bank filed in the suit at law, in connection with its claim of laches on the part of Emma L., and again al-

leges that she was guilty of laches and of such conduct as to estop her guardian from asserting the claim now made by him in the action at law, and that the claim so asserted is stale and constitutes an inequitable demand, and that to permit that action to be pressed without the right to defend it on the ground of laches is to give the plaintiff therein an unfair advantage and make the court an instrument of injustice, for which reason the court of chancery should interfere by injunction to prevent such advantage being upheld.

The material part of the prayer, waiving answer under oath, is in substance that the demand and claim of the guardian against the bank be decreed forever barred by the laches of his ward, Emma L. Holman, and that further prosecution of the suit at law be permanently enjoined.

Answer was filed by the defendant in this equity suit, therein insisting by way of demurrer that the bill (1) lacks any equity, (2) that the court of equity is without jurisdiction, (3) that the bank has a full, complete, and adequate remedy at law. These grounds of demurrer cover all material questions in the case, and grounds (4), (5), and (6) need not be stated.

The demurrer was sustained, the bill adjudged insufficient and dismissed with costs, from which decree an appeal was taken by the bank, and thereon the case is here for review.

In the action at law, the demurrer to the several paragraphs 4, 8, and 12 of the bank's answer was sustained and each paragraph stricken out, exception being saved to each decision separately, and the cause passed to this Court before final judgment.

The two cases were heard together and, as far as may be, they are disposed of together.

No claim is made that the defense of laches is available in the action at law; but the bank says that the facts set forth in said paragraphs 4, 8, and 12 are such as to constitute an estoppel *in pais,* which is as available in a court of law as in equity. That such an estoppel may be invoked in a court of either character is not open to doubt, and so the present inquiry is, whether the facts alleged in the paragraphs named are sufficient for such a defense. To the extent essential for this purpose, those paragraphs are not materially different, and our discussion and holding apply to each. By the allegations there-

in is set forth the delay of Emma L. and her guardian for over thirty-two years prior to the bringing of the action, to make any claim or assertion regarding their now pretended rights under the alleged contract, and the delay of all action and claim by them relating thereto for so long a period that all persons who were officers or agents of the bank on September 3, 1890, have died, and until all the evidence of the bank in regard to the alleged deposit has been lost or destroyed, which evidence was proper and necessary to the defense by the bank to the special counts, and thus by the failure of the guardian and Emma L. to assert their alleged rights, in a reasonable and seasonable time and manner, and by their laches and negligence in that behalf, the guardian is now barred and estopped from maintaining those counts, the allegations of which have already been substantially stated.

[1-4] When the bank received the deposit in question, its implied and valid undertaking in law was to repay the same when it should be demanded. Demand for repayment was an integral and essential part of the contract, and no right of action accrued for the money deposited without previous demand and a refusal by the bank. Consequently until then the Statute of Limitations did not begin to run. *Goodell* v. *Brandon Nat. Bank,* 63 Vt. 303, 21 Atl. 956, 25 A. S. R. 766; *Watson* v. *Phoenix Bank,* 8 Metc. (Mass.) 217, 41 A. D. 500; *Bank* v. *Merchants' Nat. Bank,* 91 N. Y. 106; *Girard Bank* v. *Bank of Penn Township,* 39 Pa. 92, 80 A. D. 507. The special counts allege such a demand and refusal September 8, 1923, and the suit at law was brought immediately thereafter. It follows that there was no delay in the bringing of that action which can properly be considered, either alone or with the other facts alleged, as feeding the claimed estoppel. It does not appear that Emma L. had anything whatever to do with the death of the officers and agents of the bank, or with the destruction of the books of the bank. There was no error in sustaining the demurrer to said paragraphs 4, 8, and 12, and in striking them from the record.

[5-7] This brings us to the consideration of the question of laches as alleged in the equity case. The plaintiff in the suit at law seeks to enforce an asserted legal right which is not barred by the Statute of Limitations. The bank, by its bill, asks the court of equity to forbid the maintenance of that suit for prior laches. In this respect the general rule applies that

when the suit at law was brought before the time fixed by the statute had expired, a court of equity will not interfere with the prosecution thereof for laches, unless such unusual conditions or extraordinary circumstances are shown from the face of the bill to exist as make it inequitable to allow such prosecution and require the application of the doctrine of laches, and on this question the burden is with the bank. 4 Pom. Eq. § 1441; *Woodlawn Realty & D. Co.* v. *Hawkins,* 186 Ala. 234, 65 So. 183. And its determination must have reference solely to the time before Emma L. became mentally incompetent, for laches cannot be imputed to a person of unsound mind. 4 Pom. Eq. § 1451; *Van Buskirk* v. *Van Buskirk,* 148 Ill. 9, 35 N. E. 383.

[8, 9] The averment in the bill that the loss of the evidence contained in the books which the bank destroyed, was due solely and directly to the failure of Emma L. to demand repayment within a reasonable time and within twenty years after the deposit was made, is but a conclusion of law and is not admitted by the demurrer. The demurrer admits the truth of the facts well stated in the bill, so far as relevant and are well pleaded; but it does not admit the conclusions of law drawn therefrom, even though they are also alleged in the bill. Story, Eq. Pl. § 452.

Instead of the loss being justly attributable to such failure of Emma L., the only conclusion in that respect which can fairly be drawn from the facts well pleaded is, that the loss is solely attributable to the voluntary and injudicious act of the bank in destroying the books with constructive notice that the deposit book given to Emma L. at the time she made the deposit had never been surrendered by her, and with the knowledge chargeable to the bank that the Statute of Limitations would not begin to run on the deposit until after demand for its repayment had been made and not complied with.

The averment as to the death of the officers and agents of the bank is of very little consequence, for under it they may have all died before the time when the bank says the deposit was repaid to the depositor.

[10] Among the incidental powers of a national bank, in carrying on the business of banking, is discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt, buying and selling exchange, loaning money,

etc., and the receiving of the money of others on general deposit. 2 Morse on Banks, 1139. Usually such deposits, either directly or indirectly, constitute a large part of the assets of the institution, and it needs no argument to convince the ordinary mind that from a practical standpoint the longer the money is allowed to remain on deposit undisturbed, the better it is for the bank. But the benefit to be derived from a long and undisturbed continuation of the deposit is not necessarily all with the bank. In the instant case, naught else appearing, it may be that the primary object of the depositor was to place her money where it could safely remain subject to her demand at any time, if needed to meet necessities consequent on misfortunes of life or infirmities of old age; and no more striking instance of the latter character need be imagined than that shown by the bill, .the depositor becoming so mentally incompetent in advanced age as to require the appointment of a guardian.

[11]    There is no allegation in the bill from which it can be said that she had any notice of the bank's intention to destroy its said books, nor that, while mentally competent to act in her own behalf, she ever heard of the action of the bank in that respect. During all that time she had a right to assume that regular and proper books of account, showing her deposit, were being kept by the bank and, to the extent of her interest as a depositor, were subject to her inspection; and that for such purpose the bank would be bound to produce them on all proper occasions, its officers having charge of the books being so far considered as the agents of both parties. *Union Bank* v. *Knapp,* 3 Pick. 96, 15 A. D. 181; *Watson* v. *Phoenix Bank, supra.* We think on the facts and circumstances shown by the bill, the delay in making the demand was not unreasonable, and that there was no negligence on the part of Emma L. or her guardian in failing to make it earlier. It follows that the right asserted by the latter is not barred by laches, and it would not be inequitable to enforce it in the action at law. *Wilder's Exr.* v. *Wilder,* 82 Vt. 123, 72 Atl. 203; *Philbrick* v. *Johnson,* 91 Vt. 270, 100 Atl. 110; *Holt* v. *Ruleau,* 92 Vt. 74, 102 Atl. 934; *Page* v. *Cave,* 94 Vt. 306, 111 Atl. 398.

Since the bill fails to show a case for the application of the doctrine of laches in defense of the claim declared upon in the action at law, the bank has a full, complete, and adequate

remedy at law; and therefore the decree adjudging the bill insufficient and dismissing the same with costs is without error.

*The judgment in the action at law is affirmed and cause remanded to be proceeded with. The decree in the equity case is affirmed with the additional costs in this court, and cause remanded.*