H. C. COMINGS AND A. J. LIVINGSTON *v.* C. A. POWELL.

May Term, 1923.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed November 16, 1923.

*Specific Performance—When Decreed On An Agreement to Sell Corporate Stock—Presumption of Continuance—Purposes of Tender—Tender Unnecessary As to Defendant Who Puts Himself in Default—Consideration for An Entire Agreement Supports Option Included as a Part Thereof—Equity—Laches—Burden of Proof—Presumption That Lower Court Made Proper Inferences—Absence of Laches Properly Inferred—Lapse of Time Alone Insufficient to Establish Laches—Party Entitled to Dividends on Decree of Specific Performance to Convey Corporate Stock.*

1. Although the general rule is that specific performance of a contract to sell and deliver shares of stock will not be decreed,

but the vendee will be left to his remedy at law for damages, where the value of the stock is not easily ascertainable, or the stock is not readily obtainable elsewhere, or there is some particular and reasonable cause for the vendee requiring the stock contracted for, a court of equity will decree specific performance and compel the vendor to deliver the stock.

2. Facts alleged in bill *held* to warrant decree of specific performance of contract to sell and deliver stock.

3. Where a bill for the specific performance of a contract to sell and deliver stock alleged that the defendant wholly repudiated his agreement to sell on a certain date, the contrary not appearing, such repudiation will be presumed to have continued.

4. Tender serves two purposes: It puts the defendant in default, and as an offer to do equity it gives the plaintiff a standing to invoke equitable relief.

5. In a suit for specific performance of a contract, where the defendant has put himself in an attitude of default, tender as to him is unnecessary, as it would be a mere formality which the law does not require, all that is required in such cases being that the plaintiff show a readiness and willingness to perform.

6. Where a partnership was formed into a corporation and as part of the agreement respecting incorporation one partner agreed to sell and deliver to the other partner and another person, each year, at par, a certain amount of the capital stock which he should acquire in the new corporation, if they desired to purchase, until all his stock was sold, the option was not void for lack of consideration, it not being necessary that the consideration should be given exclusively for the option, and the latter, being part of an entire agreement, the consideration for the agreement supported the option.

7. The omission to assert a right for an unreasonable and unexplained lapse of time, when the delay has been prejudicial to the adverse party, rendering it unequitable to enforce the right, will always bar relief in equity.

8. What constitutes unreasonable and inexcusable delay depends largely upon the circumstances of the particular case, and is, ordinarily, a question of fact upon which the party asserting it has the burden of proof.

9. Where a decree, which was upon the merits, necessarily involved the question of whether there had been an unreasonable and unexplained delay in asserting a right, the Supreme Court will

presume that the court below made such inferences from the facts found as would necessarily or might fairly result therefrom.

10. In a suit for the specific performance of an agreement to sell and deliver certain capital stock in a corporation, *held* that absence of laches might well be inferred from the facts found.

11. Lapse of time alone is not enough to establish laches, the latter involving prejudice, actual or implied, resulting from the delay.

12. In a suit for the specific performance to sell and deliver certain capital stock in a corporation, although, in the circumstances, the plaintiffs' failure to assert their rights was satisfactorily explained by their desire to avoid litigation until the stock was actually needed, they were not entitled to a return of dividends which had been paid each year in the interim to the defendant, to their knowledge and without protest by them.

APPEAL IN CHANCERY. Heard on bill, demurrer, answer, and facts found by the chancellor, in vacation after the March Term, 1922, Franklin County, *Chase*, Chancellor. Decree for the plaintiffs. The defendant appealed. The opinion states the case. *Reversed and remanded*, with directions.

*Max L. Powell* and *Fred L. Webster* for the defendant.

*John W. Redmond* for the plaintiffs.

SLACK, J. This is a bill to enforce specific performance of an agreement to sell to the plaintiffs certain shares of the capital stock of the Powell & Comings Company, a Vermont corporation. The defendant demurred to the bill, the grounds of demurrer assigned and relied upon being that the plaintiffs had an adequate remedy at law, and failure to allege tender and demand. The demurrer, after hearing, was overruled, and the bill adjudged sufficient, the benefit of the demurrer being reserved to the defendant until final hearing. Thereupon, the defendant filed an answer, and the case was heard on the merits by a chancellor, who found and reported the facts, and a decree was entered for the plaintiffs, from which this appeal was taken.

The defendant relies upon the demurrer as reserved, but we think it must be overruled. The material facts alleged in the

bill are these:   Prior to January 1, 1913, the defendant and the plaintiff, Comings, were engaged, as equal partners, in the mercantile business at Richford, Vermont.   Neither directly participated in the conduct of, nor devoted any time to, the business, but each furnished a man to represent him in that matter.   For some years previous to January 1, 1913, Comings had employed the plaintiff, Livingston, for that purpose, and the defendant had employed one Aiken.   The latter resigned in December, 1912, to take effect January 1, following.   His resignation resulted in various conferences between the partners to consider what should be done.   The defendant did not wish to quit the business immediately, nor did he want to assume the entire burden thereof, but wanted to devise some plan whereby the business, and his interest therein, might be continued, and he be allowed to gradually withdraw therefrom.   As a result of these conferences, an agreement was consummated in December, 1912, by and between the defendant and Comings and Livingston by the terms of which the business theretofore conducted by the defendant and Comings was to be incorporated under the name of Powell & Comings Company, with an issued capital stock of the face value of $18,500, which was the invoice value of the assets of the partnership.   The corporation was to have all of the partnership property for which it was to pay the full amount of its issued capital stock, $6,000 of which was to be issued to each of the parties last named, and $500 was to be issued to one Reed.   Livingston was to be the active manager of the corporation.   On February 1, 1918, Powell was to offer to Comings and Livingston, at par, $1,000, face value, of his stock, and was to offer them, at par, a like amount on February 1 of each year thereafter until all of his stock was sold.

It is further alleged that the plaintiffs have fully performed the terms of said contract; that pursuant to the terms thereof, the Powell & Comings Company was organized in January, 1913, and took over the business and property of said partnership, and has since carried on the business with Livingston as general manager; that it paid for said business and property with its capital stock issued to the persons, and in the amounts, agreed upon; that Powell, Comings, and Livingston still own all of the stock that was issued to them, respectively; that the main object of said agreement was to enable the plaintiffs, eventually, to acquire the defendant's interest in the business, and the chief

consideration and inducement for the plaintiffs in making the contract, and organizing the corporation thereunder, was defendant's agreement to sell them his stock as therein stipulated; that one of the reasons why they stipulated for this agreement on the part of the defendant was so that they might have his stock to sell to any deserving employee of the corporation whom they might desire to retain permanently; that there is no way that they can obtain any of said stock except from the defendant, as there is none of it on the market for sale only the $18,500 having been issued; that the stock has no quotable commercial value; that it is of peculiar value to the plaintiffs because they need it in specie, and that its value to them cannot be estimated in damages.

It is also alleged that on January 23, 1915, the defendant wholly repudiated his contract to sell his stock to the plaintiffs at par, and that he never offered any of his stock to them on February 1, of any year, nor at any other time, but refused to sell it at par; that on February 1, 1918, the plaintiffs were ready and willing and anxious to purchase from the defendant, at par, $1,000, face value of his stock, and were ready, willing, and anxious to purchase a like amount on the first day of February in each year thereafter, and are ready and willing to purchase from him, at par, $1,000, face value of his stock, on February 1, of each year hereafter, until all of his stock is sold, and are ready and willing, and offer, to purchase his stock, at par, in accordance with the terms of said contract.

[1, 2]  In support of his claim that the plaintiffs have an adequate remedy at law, the defendant invokes the general rule that specific performance of a contract to sell and deliver shares of stock will not be decreed, but the vendee will be left to his remedy at law for damages.  We think, however, that the allegations of the bill bring the case within the exception to this rule, equally well recognized, that where the value of the stock is not easily ascertainable, or the stock is not readily obtainable elsewhere, or there is some particular and reasonable cause for the vendee's requiring the stock contracted for, a court of equity will decree specific performance, and compel the vendor to deliver the stock (Cook on Stockholders, § 338; Cook on Corp., §§ 337, 338; 3 Williston on Contracts, § 1419; *Nason* v. *Barrett et al.,* 140 Minn. 366, 168 N. W. 581; *Hills* v. *McMunn,* 232 Ill. 488, 83 N. E. 963; *Schmidt* v. *Prichard et al.,* 135 Iowa 240, 112

N. W. 801; *Safford* v. *Barber*, 74 N. J. Eq. 352, 70 Atl. 371; *Northern Cent. R. R. Co.* v. *Walworth*, 193 Pa. 207, 44 Atl. 253, 74 A. S. R. 683), or even the more stringent rule recognized in some jurisdictions, that it must appear that the stock is of peculiar value to the vendee, or that he needs it in specie, or that its value cannot be ascertained in damages. 36 Cyc. 561, and cases there collected. The allegations show that the stock is of peculiar value to the plaintiffs, because they need it in specie and cannot purchase it elsewhere.

[3-5] Nor is the bill defective because of its failure to allege *tender and demand,* which is the only question raised under the second assignment of the demurrer. It is alleged that the defendant wholly repudiated his agreement to sell in January, 1915, and, the contrary not appearing, such repudiation will be presumed to have continued. This obviated the necessity for a *tender and demand.* Tender serves two purposes: It puts the defendant in default, and as an offer to do equity it gives the plaintiff a standing to invoke equitable relief. If the defendant puts himself in an attitude of default, tender as to him is unnecessary. It could serve no purpose so far as he is concerned, and would be a mere formality, which the law does not require. *Hambleton* v. *U. Aja Granite Co.,* 96 Vt. 199, 118 Atl. 878; *Ellis' Admr.* v. *Durkee,* 79 Vt. 341, 65 Atl. 94; *Temple* v. *Duffy,* 96 Vt. 114, 117 Atl. 101. Consequently, all that is required in such cases is that the plaintiff show a readiness and willingness to perform; and in the instant case this sufficiently appears from the allegations of the bill.

It remains to consider whether the findings support the decree. It is found that the circumstances leading up to the making of the agreement under which the corporation was formed, and the agreement itself, were substantially as alleged in the bill. It is also found that a material part of such agreement, which the plaintiffs relied upon in promising to do, and in doing, what they did concerning the formation of the corporation, and in the conduct of its business, was that the defendant, in order to bring about his gradual withdrawal from the business and make available capital stock to transfer to any deserving employee whom it might be desired to reward and induce to remain with the corporation, should offer to the plaintiffs his capital stock in accordance with the provisions of Plaintiffs' Exhibit 3, which reads as follows:

"RICHFORD, VT., Jan. 18, 1913.

I hereby agree to offer to H. C. Comings & A. J. Livingston at par February 1, 1918, $1,000 of my stock in The Powell & Comings Company and $1,000 on February 1st each year thereafter until all is sold, reserving the right to sell elsewhere if I choose provided they don't care to buy. This will give time to close inventory and declare dividend, sale to be as of January 1st.

C. A. POWELL."

It is further found that all of the provisions of said contract, except the one evidenced by Exhibit 3, have been performed by the parties; that the defendant has never performed that part of his contract, but to the knowledge of the plaintiffs has been absolutely unwilling to do so since January 23, 1915, when he notified Comings that he would not be bound by it, and would not carry it out; that up to that time the defendant and Comings had been close business associates and warm personal friends; that the plaintiffs desired to avoid as much as possible having any controversy with the defendant in respect to his stock; that none of defendant's stock was wanted for an employee of the corporation prior to January, 1922; that on January 10, 1922, Comings notified the defendant that plaintiffs wanted twenty shares of his stock for an employee of the corporation, and he refused to let them have it; that thereupon, Comings transferred twenty shares of his own stock to such employee; that shortly thereafter, the plaintiffs consulted an attorney about the matter, and on January 18 notified the defendant of that fact, by letter, and at the same time wrote him that they should insist on his turning over his stock in accordance with his agreement; that on January 28, 1922, the plaintiffs tendered to defendant $4,000 and interest thereon from January 1, 1922, and demanded $4,000 face value of his stock; that he refused to deliver it; that on February 11, 1922, they tendered him $1,000 with interest from January 1, 1922, and demanded ten shares more of his stock, which he refused to deliver; that the first tender and demand made by the plaintiffs was on January 28, 1922; that the defendant still owns all of the stock issued to him; that the stock of this corporation has no quoted market value; that there is no place where it is bought and sold, and no place where the plaintiffs can obtain it except from the defendant.

[6]    The defendant contends that the agreement which the plaintiffs are seeking to enforce is void, because without consideration.    This claim is not tenable.    It is not necessary that the consideration be given exclusively for the option.    It is enough if the option is one term of a contract for which a consideration was given.    *Thommen* v. *Smith*, 88 N. J. Eq. 476, 103 Atl. 25; *Tebeau* v. *Ridge*, 261 Mo. 547, 170 S. W. 871, L. R. A. 1915C, 367; *Hayes* v. *O'Brien*, 149 Ill. 403, 37 N. E. 73, 23 L. R. A. 555; *Murphy* v. *Anderson*, 128 Minn. 106, 150 N. W. 387; Williston on Contracts, § 1441.    Such is the case before us. Manifestly, the agreement for the option is part of the entire agreement under which the Powell & Comings Company corporation was formed and has been doing business, and is supported by the identical consideration that vitalizes all other parts of that agreement.

[7-11]    The defendant insists, also, that the plaintiffs, by their delay in making tender and demand, and in asserting their rights, are barred from maintaining this action.    The omission to assert a right for an unreasonable and unexplained lapse of time, when the delay has been prejudicial to the adverse party, rendering it inequitable to enforce the right, will always bar relief in equity.    But what constitutes unreasonable and inexcusable delay depends largely upon the circumstances of the particular case, and is, ordinarily, a question of fact upon which the party asserting it has the burden of proof.    In the case before us there is no express finding either way on that issue. But since the decree, which was upon the merits, and necessarily involved a consideration of this question, was for the plaintiffs, this Court will presume that the court below made such inferences from the facts found as would necessarily or might fairly result therefrom.    *Davenport* v. *Crowell et al.,* 79 Vt. 419, 65 Atl. 557.    And we think that the absence of laches might well be inferred from the facts found.    The defendant was unwilling to convey his stock to the plaintiffs, which fact was known to them; he and Comings had been close business associates and warm personal friends, and the plaintiffs desired to avoid as much as possible having any controversy with him about the matter; they did not require the stock for an employee of the corporation until January 10, 1922, when they made that fact known to the defendant, and upon his refusal to carry out his

agreement they took immediate steps to assert their rights. The defendant still owns the stock which he agreed to convey, which, so far as is indicated by the dividends paid, as appears from the findings, has not increased in value since February 1, 1918. From this explanation it might fairly be inferred that the delay was not unreasonable since there is nothing to indicate that the defendant was prejudiced thereby. The only fact contained in the findings which could be considered a ground for the application of the doctrine of laches is the lapse of time before plaintiffs took steps to assert their rights. But lapse of time is not enough. Laches involves prejudice, actual or implied, resulting from the delay. It does not arise from delay alone, but from delay that works disadvantage to another. *Wilder's Exr.* v. *Wilder and Deavitt,* 82 Vt. 123, 128, 72 Atl. 203, and cases there collected. See, also, *Philbrick* v. *Johnson,* 91 Vt. at page 276, 100 Atl. 110.

[12] The bill prays for an accounting by the defendant of the dividends received by him on his stock since February 1, 1918, and the decree is to that effect. While, in the circumstances, the plaintiffs' failure to assert their rights more speedily may be satisfactorily explained by their desire to avoid litigation with the defendant until his stock was actually needed for an employee of the corporation, since they choose to adopt that course, knowing, as the bill shows, that the dividends on his stock were being paid to the defendant each year, without protest by them, so far as appears, they should not now be permitted to recover those dividends. It can readily be seen that such a course might work gross injustice. But the defendant having received dividends on his stock to January 1, 1922, which appear to have exceeded the lawful rate of interest, is only entitled to interest from that date.

*Decree reversed and cause remanded, with directions that a decree be entered for the plaintiffs in accordance with the views herein expressed.*