### In re Sheldon KEITEL, Esq.

[772 A.2d 507]

No. 00-290

March 2, 2001. This case concerns a hearing panel decision of the Professional Responsibility Board ("the Board") imposing a public reprimand on respondent Sheldon Keitel, after finding that he had violated the Code of Professional Responsibility for inappropriate comments made in written correspondence to the Washington Family Court and to the Board. Pursuant to Rule 11E of Administrative Order 9, this Court, on its own motion, ordered a review of the hearing panel's decision and invited the parties to file briefs. The Office of Disciplinary Counsel urges this Court to find that: (1) lawyers on inactive status remain subject to the ethics rules; (2) respondent violated DR 7-102(A)(1) and DR 7-106(C)(6) of the Code of Professional Responsibility; and (3) a public reprimand is appropriate. Respondent asserts that neither the Court nor the Board of Professional Responsibility retain jurisdiction over attorneys on inactive status because it effectively infringes upon his First Amendment right to freedom of association.

While we agree that this Court and the Board retain jurisdiction over attorneys on inactive status, we decline to adopt the hearing panel's legal conclusion that respondent violated DR 7-102(A)(1) and DR 7-106(C)(6).[1] We further decline to adopt the hearing panel's sanction, but in doing so determine that the conduct which gave rise to the sanction may be considered in the event that respondent seeks to reactivate the status of his license to practice law in Vermont.[2]

In October 1999, the Office of Disciplinary Counsel filed a formal petition, charging respondent with violating DR 7-102(A)(1) and DR 7-106(C)(6) for comments made in a cover letter accompanying his notice of intent to appeal a

---

[1] DR 7-102(A)(1) prohibits a lawyer from taking any action "on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another." DR 7-106(C)(6) prohibits a lawyer "appearing in his professional capacity before a tribunal" from engaging in "undignified or discourteous conduct which is degrading to a tribunal."

[2] In light of our disposition of this matter, we do not reach respondent's constitutional claim.

decision of the Washington Family Court to which he was a party. Respondent's cover letter, addressed to the clerk of the court, included an inappropriate personal attack on the family court magistrate. Respondent was representing himself pro se in divorce proceedings before the court, and although an attorney admitted to practice law in Vermont, he was on inactive status.

In March 2000, the Board convened a sanctions hearing. Respondent did not appear, but delivered a letter to the hearing panel which included additional inappropriate comments directed at the same magistrate. The hearing panel reconvened in June, and issued its findings of fact, conclusions of law and sanction. Respondent did not appeal, but filed an open letter with this Court.

The Vermont Constitution states that the Supreme Court "shall have . . . disciplinary authority concerning all judicial officers and attorneys at law in the State." Vt. Const. ch. II, § 30. Pursuant to this authority, the Court promulgated rules for attorney discipline, and created the Professional Responsibility Board. See Administrative Order 9, Permanent Rules Governing Establishment and Operation of the Professional Responsibility Program. The Board holds jurisdiction over:

> [a]ny lawyer admitted in the state, including any formerly admitted lawyer with respect to acts committed prior to resignation, suspension, disbarment, or transfer to inactive status, or with respect to acts subsequent thereto which amount to the practice of law or constitute a violation of these rules or of the Code of Professional Responsibility or any rules or code subsequently adopted by the Court in lieu thereof.

A.O. 9, Rule 5(A)(1). The rule unequivocally vests the Board with jurisdiction

over lawyers who violate the rules of ethics prior, and subsequent, to their transfer to inactive status. See also *In re Taylor*, PCB Decision No. 148, 12/20/99 ("whether Respondent is active or inactive, he is still a member of the bar").

The Office of Disciplinary Counsel contends that the record in this case conclusively establishes that respondent acted in violation of DR 7-102(A)(1) and DR 7-106(C)(6) of the Code of Professional Responsibility in his correspondence with the family court magistrate and the Board, and that a public reprimand is the appropriate sanction for his actions.

This Court makes its own decisions as to attorney discipline, according deference to the Board's findings. See *In re Hunter*, 167 Vt. 219, 227, 704 A.2d 1154, 1158 (1997). Generally speaking, "[t]he purpose of sanctions is not punishment. Rather, they are intended to protect the public from persons unfit to serve as attorneys and to maintain public confidence in the bar." *In re Berk*, 157 Vt. 524, 532, 602 A.2d 946, 950 (1991). But see also *Florida Bar v. Feinberg*, 760 So. 2d 933, 939 (Fla. 2000) (attorney discipline serves several purposes, including protecting public from unethical conduct, punishing violations of canons of ethics, and deterring future misconduct); *Lawyer Disciplinary Bd. v. Veneri*, 524 S.E.2d 900, 905-06 (W.Va. 1999) (in determining proper sanction, court may consider what steps would appropriately punish respondent attorney, as well as what would serve as effective deterrent).

We reject the hearing panel's recommended sanction. Although we do not condone respondent's behavior, which exhibited a marked disrespect for the court and the administration of justice, we note that he was representing himself in a divorce case, has no prior disciplinary history, and is not currently engaged in the practice of law. Accordingly, we conclude that in this matter the purposes underlying the imposition of

sanctions will be adequately served by full consideration of respondent's conduct by the Character and Fitness Committee[3] at such time as he seeks to reactivate the status of his license to practice law in Vermont. See *Berk*, 157 Vt. at 527, 602 A.2d at 948 ("This Court retains inherent power . . . to dispose of individual cases of lawyer discipline.") (internal quotations omitted); see also *In re O'Dea*, 159 Vt. 590, 606, 622 A.2d 507, 517 (1993) ("Our powers in fashioning an appropriate sanction are broad.").

*We decline to adopt the hearing panel's legal conclusion that the respondent violated DR 7-102(A)(1) and DR 7-106(C)(6). At such time respondent seeks to resume active status as a practicing attorney, the conduct which gave rise to the charges shall be considered by the Character and Fitness Committee in determining whether respondent may resume active status.*

---

[3] See Rules of Admission to the Bar § 11(a), (b) (requiring applicant to possess "good moral character," and to "consent to an investigation by the Character and Fitness Committee" in order to exclude "those persons possessing character traits that are likely to result . . . in a violation of the Code of Professional Responsibility").